UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward X. MONDELLO,
Defendant–Appellant.

No. 90–50121.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1990.

Decided March 7, 1991.

Carolyn Chapman, San Diego, Cal., Robert M. Leen, Seattle, Wash., for defendant-appellant.

John R. Kraemer, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BEEZER and TROTT, Circuit Judges, and CROCKER, District Judge.*

* Honorable M.D. Crocker, Senior United States District Judge, Eastern District of California, sitting by designation.

TROTT, Circuit Judge:

Edward X. Mondello appeals his sentence imposed under the United States Sentencing Guidelines (U.S.S.G.), and the denial of his motion to suppress evidence. He claims (1) the district court applied the Guidelines incorrectly, (2) the Guidelines are contrary to the Sentencing Reform Act of 1984 (codified as amended), 18 U.S.C. § 3551 *et seq.* (1988), and 28 U.S.C. § 991 *et seq.* (1988), (3) the Guidelines are unconstitutional in several respects, and (4) the warrant authorizing the search of his luggage was issued on the basis of information obtained during his illegal detention, requiring suppression of the evidence found inside. We affirm.

## I

Based on evidence from an informant, customs agents believed Mondello was transporting drugs between San Diego, Ft. Lauderdale, and Boston. Mondello was about to fly out of San Diego one night when an agent rapped on the window of his privately chartered plane and asked to board it for inspection. The door was opened, and the agent entered. He asked Mondello if he could search his bags, but Mondello told him to get a warrant first. The agent replied he would try to obtain a warrant, but told Mondello to wait for a moment while he took the bags off the plane to have a trained dog sniff them for contraband. The sniff test was positive and was completed within thirty minutes of the beginning of Mondello's detention. Mondello was then held for an additional ninety minutes before he was released. His bags remained with the agents, who eventually obtained a warrant to open them. The bags contained 210 pounds of marijuana.

The authorities began searching for Mondello within a few days of his arrest. They contacted Mondello's attorney, who tried to arrange his surrender, but Mondello proved uncooperative. For approximately two weeks his whereabouts could not be deter-

mined. When federal officers finally located him on a freeway, he fled from his car and was captured after a forty minute chase.

The district court denied Mondello's motion to suppress the evidence taken from his luggage. Mondello then pleaded guilty to possession of marijuana with intent to distribute. 21 U.S.C. § 841(a)(1) (1988). The district court enhanced Mondello's sentence by two levels based on his flight, on the ground he had "willfully ... attempted to obstruct or impede, the administration of justice...." U.S.S.G. § 3C1.1. Mondello timely appeals.

## II

### *Two Point Enhancement for "Obstructing Justice"*

■ Mondello argues the flight from his car does not qualify as an "obstruction of justice" under U.S.S.G. § 3C1.1. Generally, "[a] district court's determination of whether a defendant obstructed justice is reviewed as a factual finding under the clearly erroneous standard...." *United States v. Lofton,* 905 F.2d 1315, 1316 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990) (citation omitted). As the Second Circuit has observed, however, the question whether flight constitutes obstruction of justice "turns primarily on the legal interpretation of a guideline term" and properly is reviewed de novo. *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990).

Section 3C1.1 provides:[1]

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by *2* levels.

*Id.* Mondello emphasizes the "willfulness" element of the test, characterizing his conduct as a panicked flight from pursuing officers that did not amount to a "willful"

---

**1.** Section 3C1.1 was worded somewhat differently at the time Mondello was sentenced, but the change in language is not material to this case. We therefore quote the new version for the convenience of our readers.

attempt to obstruct the administration of justice.

In *Stroud,* police officers surprised the defendant in the act of committing a bank robbery and chased him for several blocks before catching him. The district court increased his sentence by two levels based on the flight, relying on section 3C1.1. The Second Circuit reversed:

> [W]e are convinced that the word "willfully," as used in section 3C1.1, requires that the *defendant consciously act with the purpose* of obstructing justice. We therefore hold that mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement.

*Stroud,* 893 F.2d at 507 (emphasis in original) (footnote omitted). The court was careful to limit its holding to cases where flight occurs "in the immediate aftermath of a crime," as a spontaneous reaction:

> Here, the purpose of [defendant's] flight was not a deliberate pre- or post-arrest attempt to frustrate or impede an ongoing criminal investigation, as in the case of an individual who flees while being sought for questioning *some time after* the commission of a crime. Nor is this a case where instinctual flight, due to its duration or acts occurring in the course thereof, ripens into a willful attempt to impede or obstruct the administration of justice. [citation omitted] Rather, Stroud's flight appears to have been a natural attempt to avoid apprehension, not a willful attempt to impede or ob-

struct justice within the purview of section 3C1.1.

*Id.* at 508 (emphasis supplied) (footnote omitted).

This circuit has embraced the *Stroud* court's view of the "willfulness" requirement in section 3C1.1,[2] as well as its more specific holding on the issue of flight:

> The commentary to [section 3C1.1] states that it provides an enhancement for a defendant "who engages in conduct calculated to mislead or deceive authorities or those in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges." It is clear from this commentary that what is intended is something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police. "Mere flight in the *immediate aftermath of the crime*" does not justify the enhancement. *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990).

*United States v. Garcia,* 909 F.2d 389, 392 (9th Cir.1990) (emphasis supplied). The *Garcia* court did not expand on the "immediate aftermath of the crime" distinction drawn in *Stroud,* but it did quote the critical phrase from that case, implying such a distinction was sound.[3]

■ Mondello's flight did not occur in the immediate aftermath of his crime. The crime had taken place three weeks before. Mondello had already been arrested for the offense and told he was a suspect in a criminal case. This is far from the situation where, for example, a criminal is surprised in the act of committing a crime and

---

2. *Lofton,* 905 F.2d at 1316–17 (citing *Stroud,* 893 F.2d at 507).

3. The Fifth and Seventh Circuits also have spoken in this area. The Seventh Circuit's position is that mere flight from an arrest, without other aggravating factors, does not constitute obstruction of justice under section 3C1.1. *United States v. Hagan,* 913 F.2d 1278, 1284–85 (7th Cir.1990) (finding no aggravating factors in that case); *United States v. White,* 903 F.2d 457, 461–62 (7th Cir.1990) (finding obstruction of justice where flight involved high-speed auto chase which endangered lives of police and bystanders). The Fifth Circuit has reserved judgment on the question whether flight alone qualifies as an obstruction of justice. *United States*

v. *Pierce,* 893 F.2d 669, 677 (5th Cir.1990) (no need to reach the question since enhancement under section 3C1.1 justified on alternate ground that defendant had attempted to influence a witness's testimony); *United States v. Velasquez–Mercado,* 872 F.2d 632, 636 n. 3 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 187, 107 L.Ed.2d 142 (1990) (recognizing the question but basing enhancement under section 3C1.1 on additional finding that defendant threatened witness); *United States v. Franco–Torres,* 869 F.2d 797, 800 (5th Cir.1989) (question avoided where enhancement under 3C1.1 was based on fact that defendant shot at police while fleeing and then attempted to hide the gun).

makes an evasive dodge to avoid apprehension. For two weeks prior to his final arrest Mondello played a cat-and-mouse game of avoiding the authorities, though he knew he was expected to surrender himself voluntarily. Moreover, upon fleeing his car, Mondello forced the arresting officers to chase him for over forty minutes before they captured him. Based on these circumstances, we hold Mondello obstructed the administration of justice within the meaning of section 3C1.1.[4]

## III

### Constitutional Challenges to the Sentencing Guidelines

We review de novo the question whether the Sentencing Guidelines violate the Constitution. *United States v. Brady,* 895 F.2d 538, 539 (9th Cir.1990).

#### A. *The Guidelines' Limitation on Judicial Discretion*

■ Mondello claims the Sentencing Guidelines offend due process because they restrict the district court's sentencing discretion, ignore mitigating factors relating to the defendant's character and background, and generally encourage less individualized sentencing. The Ninth Circuit has rejected these precise claims as well as closely related due process theories. *United States v. Chalker,* 915 F.2d 1254, 1258–59 (9th Cir.1990); *United States v. Wilkins,* 911 F.2d 337, 339 (9th Cir.1990); *United States v. Litteral,* 910 F.2d 547, 551 (9th Cir.1990); *United States v. Sanchez,* 908 F.2d 1443, 1446 (9th Cir.1990); *United States v. Jones,* 907 F.2d 929, 930 (9th Cir.1990); *United States v. Foreman,* 905 F.2d 1335, 1336 n. 1 (9th Cir.1990);

*Brady,* 895 F.2d at 540–44; *United States v. Belgard,* 894 F.2d 1092, 1100 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990).

#### B. *The Prosecutor's Acquisition of Sentencing Powers*

■ Mondello's next theory is that the Guidelines violate due process and separation of powers because the prosecutor effectively can set a defendant's sentence by determining what crime to charge at the outset. The due process aspect of this argument was rejected in *Sanchez,* 908 F.2d at 1445–46. The separation of powers claim is meritless as well for the reasons stated in *United States v. Thomas,* 884 F.2d 540, 544 (11th Cir.1989) and *United States v. Saldivar,* 730 F.Supp. 329, 330–31 (D.Nev.1990). Cf. *United States v. Ayarza,* 874 F.2d 647, 652–53 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); *United States v. Huerta,* 878 F.2d 89, 91–93 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990); *United States v. Grant,* 886 F.2d 1513, 1513–14 (8th Cir. 1989). Prosecutors have long had the ability to influence a defendant's sentence by deciding what crime to charge. The Sentencing Guidelines do not appreciably augment this historic power.

#### C. *The Right Against Self–Incrimination*

■ Mondello contends the "acceptance of responsibility" provision in section 3E1.1 of the Guidelines violated his Fifth Amendment right against self-incrimination because it coerced him to plead guilty in order to qualify for the sentence reduction

---

**4.** We are aware that since Mondello was sentenced a new "application note" has been added to the commentary section of section 3C1.1 clarifying what categories of activities should *not* be considered obstructions of justice: "avoiding or fleeing from arrest...." U.S.S.G. § 3C1.1, application note 4(d). Mondello points out that note 4(d) does not contain the "immediate aftermath of the crime" distinction discussed in *Stroud* and *Garcia,* but rather suggests *all* flights incident to an arrest, as a class, should not count as obstructions of justice. We are not convinced the drafters of note 4(d) intended it

to apply to all flights from arrest, regardless of the circumstances surrounding them. As stated above, we are not dealing here with a simple flight from arrest. Mondello had already been arrested for his offense and was expected to surrender himself. Instead, he decided to hide out for two weeks and then engage in a forty minute ruse to avoid capture. We decline to adopt a cramped reading of note 4(d) that would ignore the realities of this case, where there was an attempt to escape justice and not just the scene of a crime.

he received. This argument is now foreclosed. *United States v. Gonzalez*, 897 F.2d 1018, 1020–21 (9th Cir.1990).

## IV

### *Statutory Claims*

#### A. *Challenge to the $10,000 Fine*

■ Mondello claims the fine provisions of the Guidelines are contrary to statutory authority and that the district court erred in failing to determine whether Mondello was financially able to bear the fine assessed. As the government points out, Mondello did not contest the fine in the district court.[5] Mondello does not respond to this point in his reply brief. "As a general rule, we will not consider an issue raised for the first time on appeal." *United States v. Kimball*, 896 F.2d 1218, 1219 (9th Cir.1990). We refuse to consider Mondello's claim since none of the exceptions to the rule apply here. *Id.*

#### B. *The Guideline's Restriction of Probation.*

■ Mondello argues the Guidelines permit probation in far fewer instances than Congress intended. *See* U.S.S.G. § 5B1.1–.4. Congress, the argument goes, only specified certain serious crimes for which probation would be *un*available, *see* 18 U.S.C. § 3561 (1988), thus implying the Sentencing Commission should permit probation for most of the unenumerated crimes. This contention also has been rejected. *Litteral*, 910 F.2d at 551; *Belgard*, 894 F.2d at 1099; *Saldivar*, 730 F.Supp. at 331.

#### C. *The Supervisory Release Claim*

■ Mondello claims section 5D1.1(a) of the Guidelines, which requires supervisory release when a sentence of more than one year is imposed, is contrary to the intent of Congress. He makes the same claim with respect to section 5D1.2, which establishes mandatory minimum terms of supervised

release.[6] We recently rejected these arguments. *See United States v. Martinez–Cortez*, 924 F.2d 921, 924 n. 7 (9th Cir. Jan. 30, 1991); *see also United States v. West*, 898 F.2d 1493, 1503 (11th Cir.1990); *United States v. Mendez*, 691 F.Supp. 656, 663–64 (S.D.N.Y.1988); *United States v. Amesquita–Padilla*, 691 F.Supp. 277, 289 (W.D. Wash.1988); *United States v. Chambless*, 680 F.Supp. 793, 802 (E.D.La.1988).

#### D. *"Offender Characteristics"*

■ Mondello contends the Guidelines fail to consider offender characteristics, contrary to the intent of Congress. As we explain below, Congress intended certain aspects of a defendant's background and character to be relevant to sentencing determinations. However, it allowed the Commission to marginalize the role of these factors, which the Commission has done. The result is that they are "not ordinarily relevant in determining whether a sentence should be *outside* the guidelines." U.S.S.G. § 5H1.1–.6 (emphasis supplied). In other words, they should not ordinarily influence downward or upward "*departures* from the appropriate Sentencing Guideline range." *United States v. Duarte*, 901 F.2d 1498, 1500 (9th Cir.1990) (emphasis in original). Offender characteristics may be considered, however, in making adjustments *within* the set range mandated by the guidelines. *Id.* at 1500–01.

The following statutory provisions are relevant to Congress's intent on the subject:

*(a) Factors to be considered in imposing a sentence.*—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, *shall consider* [among other things]—

*(1)* the nature and circumstances of the offense and the *history and characteristics of the defendant;*

.  .  .  .  .

---

5. In fact, Mondello even agreed by stipulation to credit to his $10,000 fine the sum of $1,000, previously seized from him by the government.

6. Sections 5D1.1(a) and 5D1.2 were designated 5D3.1(a) and 5D3.2 at the time Mondello was sentenced. The language of the sections remains the same.

18 U.S.C. § 3553(a)(1) (1988) (emphasis supplied).

*Use of information for sentencing*

No limitation shall be placed on the information concerning the *background, character,* and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661 (1988) (emphasis supplied).

The above passages from Title 18 express Congress's general policy that an offender's background and character may influence the length of the sentence imposed. On the other hand, in delineating the Commission's duties, Congress declared:

*(d)* The Commission in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, *shall consider* whether the following matters, among others, with respect to a defendant, have *any relevance* to the nature, extent, place of service, or other incidents of an appropriate sentence, and *shall take them into account only to the extent that they do have relevance—*

*(1)* age;

*(2)* education;

*(3)* vocational skills;

*(4)* mental and emotional condition ...;

*(5)* physical condition, including drug dependence;

*(6)* previous employment record;

*(7)* family ties and responsibilities;

*(8)* community ties;

*(9)* role in the offense;

*(10)* criminal history; and

*(11)* degree of dependence upon criminal activity for a livelihood.

.    .    .    .    .

*(e)* The Commission shall assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the *general inappropriateness* of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.

28 U.S.C. § 994(d), (e) (1988) (emphasis supplied). Thus, in Title 28 Congress gave the Commission a specific mandate to determine the extent to which certain offender characteristics are relevant to sentencing, despite its general policies expressed in Title 18.

Two sections of the Guidelines implement that mandate. The first section relies on 18 U.S.C. § 3661 (1988), *supra,* echoing the language of that provision:

*Information to be Used in Imposing Sentence (Selecting a Point Within the Guideline Range or Departing from the Guidelines)*

In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.

*Commentary*

*Background:* This section distinguishes between factors that determine the applicable guideline sentencing range (§ 1B1.-3) and information that a court may consider in imposing sentence [sic] within that range.... [Based on § 3661, it is] clear that Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence ... Some policy statements [in the guidelines] do, however, express a Commission policy that certain factors should not be considered for any purpose, or should be considered only for limited purposes. *See, e.g.,* Chapter Five, Part H (Specific Offender Characteristics).

U.S.S.G. § 1B1.4 & Commentary. This section thus is in complete harmony with Congress's background rule that offender characteristics may be considered unless otherwise determined.

As noted above, however, Congress also asked the Commission to determine the relevance of certain specific characteristics. That mission was fulfilled in Chapter 5 of the Guidelines, in a provision entitled "Part H—Specific Offender Characteristics." U.S.S.G. § 5H1.1–.6. In Part H, the Commission determined that the first eight circumstances listed by Congress in 28 U.S.C. § 994(d) (1988), are "not ordinarily relevant in determining whether a sentence should be *outside* the guidelines...." U.S.S.G. § 5H1.1–.6 (emphasis supplied).[7] The Commission's decision here only limits "*departures* from the appropriate Sentencing Guideline range." *Duarte,* 901 F.2d at 1500 (9th Cir.1990).

■ The result is that, in extraordinary circumstances, a court may rely on one of the six factors listed in section 5H1.1–.6 to depart from the guideline range. *Cf. United States v. Doering,* 909 F.2d 392, 394 (9th Cir.1990) (section 5H1.3 makes a defendant's mental condition relevant in extraordinary case). And even in the ordinary case, a court may still consider any of these factors in making adjustments *within* the range required. We hold the Commission's decision to deem the six factors "not ordinarily relevant" to departure determinations accords fully with Congress's expression in 28 U.S.C. § 994(e) (1988) of the "general inappropriateness" of considering them in sentencing. Mondello's argument to the contrary lacks merit.

## V

### *Motion to Suppress Evidence*

Mondello claims his initial thirty minute detention, the seizure of his luggage, and his subsequent ninety minute detention violated the Fourth Amendment. Therefore, he says, all evidence gathered in that time

was tainted and could not serve as a basis for the probable cause needed to obtain the warrant issued. Because the warrant was not supported by probable cause, he continues, it was impermissible for the agents to open his luggage, and the contents should have been suppressed. We disagree, for the reasons stated below.

■ Whether the customs agent had a reasonable suspicion to board Mondello's plane is a mixed question of fact and law reviewed de novo. *United States v. Hernandez–Alvarado,* 891 F.2d 1414, 1416 (9th Cir.1989).

■ Law enforcement officers may briefly detain a traveler and his luggage based on a reasonable articulable suspicion that a crime is being committed. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1 (1989). Whether such a suspicion was present in this case depends on the totality of the circumstances. *Id.* We have held that the boarding of a private plane to ask passengers questions may be considered an investigative stop. *United States v. Anderson,* 663 F.2d 934, 940–41 (9th Cir.1981). The investigatory stop standard also may apply where luggage is seized and subjected to a sniff examination, depending on the duration of the detention. *United States v. Place,* 462 U.S. 696, 708–10, 103 S.Ct. 2637, 2645–46, 77 L.Ed.2d 110 (1983).

■ The customs agents who detained Mondello were aware of the following facts:

(1) Mondello had been chartering flights for the past six months, paying $12,000 in cash each time;

(2) The flights were one-way, either to Boston or to Ft. Lauderdale, a known drug haven;

(3) The flights were late at night;

(4) There was no "lead time" before the departures (i.e., Mondello booked the flights on the day he was to leave);

---

**7.** The Commission compressed the eight-factor list in section 994(d) into a six-factor list in    U.S.S.G. § 5H1.1–.6.

(5) Mondello told the charter company he was a musician, yet he never carried an instrument on the plane;

(6) A trained police dog had previously "alerted" in the presence of money Mondello had given the charter pilot.

These facts strongly suggested Mondello was trafficking narcotics. We hold there was a reasonable suspicion a crime was afoot.

Though the initial boarding of Mondello's plane was supported by reasonable suspicion, we must now ask whether his thirty minute detention exceeded the bounds of an investigatory stop.

■■ Whether an investigatory stop has become a full fledged arrest, requiring probable cause, depends in part on the duration of the detention. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *see also United States v. Holzman,* 871 F.2d 1496, 1501 (9th Cir. 1989). In *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the Supreme Court rejected the Fourth Circuit's rule that a detention exceeding twenty minutes can never qualify as an investigatory stop. The Court stressed that "our cases impose no rigid time limitation on *Terry* stops" and that the inquiry must focus on other factors as well, such as "the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* at 685, 105 S.Ct. at 1575 (citations omitted); *see generally United States v. Bautista,* 684 F.2d 1286, 1290–91 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983); *United States v. Winfrey,* 915 F.2d 212, 216 (6th Cir.1990); *United States v. Hardy,* 855 F.2d 753, 759 (11th Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989); *United States v. Rutherford,* 824 F.2d 831, 834 (10th Cir.1987); *United States v. Alpert,* 816 F.2d 958, 961–63 (4th Cir.1987).

■ Though the stop here was thirty minutes long, the agents worked as quickly as possible to apply the sniff test to Mondello's luggage. Under the circumstances, Mondello's thirty minute detention did not amount to an arrest.

■ Mondello also challenges the added ninety minute detention following the sniff test. We agree with the district court that once the positive sniff test was completed, probable cause existed for the agents to further detain Mondello and his luggage. We note parenthetically that, even if no probable cause existed for the ninety minute detention, there was no suppressible evidence found during this period anyway. The positive sniff test provided the basis for the warrant, and that test was completed during the initial thirty minute investigatory stop. We hold the district court correctly denied Mondello's motion to suppress the contents of his luggage.

AFFIRMED.

BEEZER, Circuit Judge:

I respectfully dissent.

I concur in the court's opinion except for part II, which approves a two-point sentencing enhancement for obstruction of justice. The enhancement is approved on the ground that

> [f]or two weeks prior to his final arrest Mondello played a cat-and-mouse game of avoiding the authorities, though he knew he was expected to surrender himself voluntarily. Moreover, upon fleeing his car, Mondello forced the arresting officers to chase him for over forty minutes before they captured him.

These factors do not justify the enhancement, either separately or in combination.

A. *The Three Week Hiatus Between Mondello's Original Detention and His Arrest*

Reliance on *United States v. Stroud,* 893 F.2d 504 (2d Cir.1990), is misplaced. There the Second Circuit suggested that because "the word 'willfully,' as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice," obstruction could be found where there is "a deliberate pre- or post-ar-

rest attempt to frustrate or impede an on-going criminal investigation, as in the case of an individual who flees while being sought for questioning some time after the commission of a crime." *See id.* at 507 (emphasis in original).

A careful reading of the Guidelines, however, reveals that obstruction of justice should not be found simply because a suspect refuses to surrender himself to law enforcement officials. The Guidelines deal explicitly with this issue, not by penalizing a suspect who does not turn himself in, but by rewarding one who does. Section 3E1.1 mandates a reduction of the offense level where the criminal accepts responsibility for his crime. U.S.S.G. § 3E1.1 (1990). Acceptance of responsibility includes "voluntary surrender to authorities promptly after commission of the offense." *Id.* Application Note 1(d). The district court at sentencing properly noted that Mondello's failure to surrender did not constitute obstruction, but that "the credit he would get for [initially contacting counsel and trying to make arrangements for his surrender] is negated by the subsequent conduct, that is, that he didn't surrender and kept stretching it out."

Additionally, the Application Notes in force since November 1, 1990, list "avoiding or fleeing from arrest" as an example of conduct that does *not* warrant application of the enhancement. U.S.S.G. § 3C1.1 Application Note 4(d).[1] Avoiding arrest logically includes not surrendering to the authorities, and suggests that even doing so willfully does not constitute obstruction.[2] It is irrelevant, therefore, that Mondello was detained during the drug sniff, knew he was suspected, or knew there was a warrant issued for his arrest.[3]

### B. *Flight from Arresting Officers*

All circuits that have addressed this question have agreed that section 3C1.1 is intended to deal with "something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police," and that "[m]ere flight in the immediate aftermath of a crime" does not justify the enhancement. *See United States v. Garcia,* 909 F.2d 389, 392 (9th Cir.1990); *United States v. Hagan,* 913 F.2d 1278, 1285 (7th Cir.1990); *Stroud,* 893 F.2d at 507. However, there is no reason why an attempt to avoid arrest at some time after the commission of the crime is necessarily less instinctive or more willful than an attempt to escape the scene of a crime, nor any reason why the latter is less worthy of punishment.[4] The Guidelines Commission recognized this when it included "fleeing from arrest" as an example of conduct that does not constitute obstruction of justice under section 3C1.1.

Whether or not the Second Circuit will continue the distinction between flight in the immediate aftermath of the crime and flight some time later, nothing in *Garcia* requires us to adhere to a similar distinction. By quoting the Second Circuit's statement that " '[m]ere flight in the aftermath of the crime' does not justify the enhancement," *Garcia,* 909 F.2d at 392

---

1. The majority notes that the language of section 3C1.1 has changed slightly since Mondello's sentencing, but that the change is not relevant to this case. Likewise, although the Application Notes in force prior to November 1990 did not include examples of conduct that does not warrant enhancement under section 3C1.1, the substance of the language defining the enhancement was not changed by the November amendments. It is therefore reasonable to assume that the new Notes serve to clarify the manner in which the drafters intended the section to be applied even prior to the latest amendments.

2. The district court did not base its enhancement decision on the time elapsed before Mondello was arrested, and thus did not consider whether he had an intent to obstruct justice during that time.

3. In fact, Mondello's attorney had been in contact with the police, and Mondello may have had a reservation to fly to San Diego the day after he was arrested, suggesting that rather than intending to obstruct justice, Mondello intended to turn himself in at some time.

4. It is irrelevant that Mondello may have attempted "to escape justice and not just the scene of the crime." Nothing in section 3C1.1 or the Application Notes draws any distinction between escaping from the scene of the crime and escaping from arrest elsewhere. Application Note 4(d) lists "avoiding ... arrest," which surely constitutes an attempt to escape justice, as conduct that does not warrant enhancement.

(quoting *Stroud,* 893 F.2d at 507), we did not adopt any distinction between flight immediately following the crime and flight at any other time. Like *Stroud, Garcia* involved only flight in the immediate aftermath of discovery of the crime;[5] the question of flight at a later time was neither before the court nor addressed by it.

Although the Second Circuit also suggested that there might be cases in which "instinctual flight, due to its duration or acts occurring in the course thereof, ripens into a willful attempt to impede or obstruct the administration of justice," *Stroud,* 893 F.2d at 508 (citation omitted), recent clarification of the Guidelines refutes this proposition. Furthermore, there is nothing to suggest that Mondello had any greater opportunity to make a conscious decision to obstruct justice while fleeing the police than the defendant in *Stroud,* who

> made extraordinary efforts to flee after he realized that he was detected by the police. The defendant fled the bank, ran across rooftops, removed his jacket and hid under a boat. When apprehended by a police officer, he pulled loose twice, jumped a fence and was arrested only after he ran into traffic, blocks away, and was pursued by numerous officers and a police dog.

893 F.2d at 505.

### C. *The Totality of the Circumstances*

Some circuits have upheld enhancement under section 3C1.1 where a suspect's flight from arresting officers was combined with other obstructive conduct,

usually an attempt to destroy evidence of crime. For example, in *United States v. Galvan–Garcia,* 872 F.2d 638, 641 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989), the enhancement was affirmed where the defendant attempted to toss bags of marijuana out the window before being stopped by Border Patrol agents. *See also United States v. Frances–Torres,* 869 F.2d 797, 800 (5th Cir. 1989) (defendant shot at agent chasing him and then threw the gun away to hide it from investigating officers). In each of these cases, the obstruction existed independent of the attempt to flee.[6] In the present case, there is no evidence of any attempt to destroy evidence or to do anything other than avoid arrest.

For these reasons, I would reverse and remand for resentencing.

---

**5.** Technically, *Garcia* presents a situation different from that of *Stroud.* In *Garcia,* the defendant fled when he was discovered to be carrying counterfeit money, 909 F.2d at 390–91, which is not quite an attempted escape from the "scene of the crime." This highlights an inconsistency that results if the determinative factor is whether the flight is in the immediate aftermath of the crime. There is no relevant distinction between the flight of a defendant whose crime was committed continually for a period of time before it was discovered, but who flees as soon as the crime is discovered, such as the defendant in *Garcia,* and a defendant who completes a crime and then flees weeks later when he is finally located by the police, as happened in the present case. *Cf. Hagan,* 913 F.2d 1278 (7th Cir.1990) (the attempt of defendant, a marijuana cultivator, to flee his home when police pulled up in

unmarked cars did not justify enhancement under section 3C1.1).

**6.** In *United States v. White,* 903 F.2d 457 (7th Cir.1990), and *United States v. Tellez,* 882 F.2d 141 (5th Cir.1989), an obstruction enhancement was affirmed because in each case the defendant's attempted flight endangered the lives of arresting officers and innocent bystanders. A new ground for enhancement was added to the Guidelines in November 1990, allowing for a two level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2 (1990). There was no evidence before the district court that Mondello's flight created any risk of injury.