963 F.2d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tajudeen AGIA, Johnkay Ikeogu, and Adetola Oshinaike,
Defendants-Appellants.
 Nos. 91-30142 to 91-30144.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 7, 1992.*
Decided May 22, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tajudeen Agia, Johnkay Ikeogu, and Adetola Oshinaike appeal their convictions for conspiracy to import heroin, importation of heroin, possession of heroin with intent to distribute, and use of false passports in violation of 21 U.S.C. §§ 963, 952, 841(a)(1) (1988) and 18 U.S.C. § 1543 (1988), respectively. We have jurisdiction under 28 U.S.C. § 1291 (1988). We affirm.
 
 FACTS
 
 3
 Agia, Ikeogu, and Oshinaike arrived at Seattle-Tacoma International Airport from Singapore on November 16, 1990. Ikeogu presented his passport to the Immigration and Naturalization Service ("INS") inspector who noticed that it was of poor quality and contained letters with double impressions. The inspector had noticed Ikeogu talking to Oshinaike in line, and asked to see Oshinaike's passport. Oshinaike's passport was similarly of poor quality and contained double impression letters. Based on his suspicion that the passports were counterfeit, the inspector directed Ikeogu and Oshinaike to the INS's secondary inspection area. Agia was also directed to the secondary inspection area based on information that he was traveling with Ikeogu and Oshinaike.
 
 
 4
 The three defendants were placed in separate interview rooms. All three defendants stated that they were born in Nigeria. Agia claimed that he did not know Ikeogu and Oshinaike. The defendants' tickets were in sequential order and all showed an identical itinerary. Agents from the United States Customs Service were contacted based on the counterfeit passports, the fact that the defendants were travelling together from a drug source country, and information that Nigerians were involved in drug trafficking along the West Coast.
 
 
 5
 The three defendants were moved to the Customs Service's secondary inspection area for further questioning. The defendants answered inconsistently to questions about themselves and their travel plans. Lomotil, a strong anti-diarrhea medication which slows the bowels, was found in Oshinaike's luggage. Agia and Oshinaike signed consent forms for a body cavity search and x-ray examination. Ikeogu initially gave oral consent to the body cavity search and x-ray examination, but declined to sign a consent form. He later signed the form.
 
 
 6
 X-rays of Ikeogu and Oshinaike revealed numerous foreign objects in their alimentary canals. Agia's x-ray showed no foreign objects. Shortly after the x-rays, Ikeogu and Oshinaike began to expel round pellets wrapped in condoms and tape. The pellets contained heroin. Some of the pellets emerged with the outer wrapping broken. The doctors feared the pellets could unwrap and release the heroin into the bloodstream, which would be fatal. The doctors advised Ikeogu and Oshinaike that it was medically necessary for them to take a laxative at once. Ikeogu took the laxative voluntarily. Oshinaike initially took the laxative voluntarily, but then refused to take more. The doctors, to safeguard Oshinaike's health, restrained him and administered a laxative through a feeding tube.
 
 DISCUSSION
 A. Detention and X-ray Examinations
 
 7
 Ikeogu and Oshinaike argue that the x-ray examinations and seizure of the heroin violated their Fourth Amendment rights. They argue that the government did not have reasonable suspicion to detain them and that they did not consent voluntarily to the x-ray examination. We disagree.
 
 
 8
 Whether customs officials had reasonable suspicion to detain defendants is a mixed question of fact and law we review de novo. United States v. Mondello, 927 F.2d 1463, 1470 (9th Cir.1991). Whether reasonable suspicion was present depends on the totality of the circumstances. Id.
 
 
 9
 The defendants' passports looked suspicious. They traveled together from a drug source country on sequentially numbered tickets. They answered inconsistently to questions from the Customs Service agents. Oshinaike carried Lomotil in his luggage, a medicine "often used by body cavity smugglers to prevent narcotics from passing through their system before they enter the United States." United States v. Chukwubike, 956 F.2d 209, 210 (9th Cir.1992). Further, the Customs Service agents had information about Nigerians smuggling drugs along the West Coast. We hold that these facts created reasonable suspicion for detaining the defendants on the basis that they were smuggling drugs internally.
 
 
 10
 Whether consent to search was given voluntarily is a question of fact we review under the clearly erroneous standard. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988). Whether consent was voluntary is determined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).
 
 
 11
 At the hearing to suppress the heroin, the district court concluded that the defendants voluntarily consented to the x-ray examinations. The court noted that even though Ikeogu initially refused to sign the consent form, his oral consent was sufficient. Because the doctors gave the laxatives to Ikeogu and Oshinaike for medical purposes, the doctors' actions are neither a search nor a seizure under the Fourth Amendment. Chukwubike, 956 F.2d at 212. We hold that the district court's decision was not clearly erroneous.
 
 B. Evidence
 
 12
 Agia and Oshinaike argue that the district court erred in admitting foreign business records under 18 U.S.C. § 3505 (1988) because the records were inadmissible hearsay. We disagree.
 
 
 13
 We review a district court's decision to admit evidence under a hearsay exception for abuse of discretion. United States v. Sherlock, 865 F.2d 1069, 1083 (9th Cir.1989). The district court found that the certifications offered to verify the foreign business records met the requirements for admission under section 3505. The government introduced a certification by an employee of the Singapore travel agency, executed under threat of criminal penalties for perjury in Singapore, declaring that the agency's records were prepared in the regular course of business with knowledge of the matters recorded at or near the time that those matters occurred. With respect to the hotel records, the government introduced a similar certification by the hotel manager. We hold that the district court did not abuse its discretion.
 
 
 14
 Agia's and Oshinaike's contention that the government must identify the person who actually prepared the entries in the documents sought to be admitted is meritless. The government is not required to "establish when and by whom the documents were prepared." United States v. Ray, 930 F.2d 1368, 1370 (9th Cir.1990) (interpreting Fed.R.Evid. 803(6)).
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3