**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Helene Donna ALPERT, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carl Henry ALPERT, Defendant–Appellant.**

Nos. 91–8957, 91–9034.

United States Court of Appeals, Eleventh Circuit.

April 26, 1993.

---

**456**

Alan J. Baverman, Atlanta, GA, for Helene Donna Alpert.

Donald F. Samuel, Garland & Samuel, P.C., Atlanta, GA, for Carl Henry Alpert.

Martin James Weinstein, Asst. U.S. Atty., and Joe D. Whitley, U.S. Atty., Atlanta, GA, for U.S.

Before TJOFLAT, Chief Judge, BLACK, Circuit Judge, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

Helene Donna Alpert and Carl Henry Alpert appeal the district court's application of the United States Sentencing Guidelines (the "Sentencing Guidelines") in computing their sentences. The district court enhanced the Alperts' sentences for obstruction of justice because they moved to California while engaged in plea negotiations with the United States Attorney. In addition, the district court departed upward in sentencing Carl Alpert to ensure that his sentence would be twice as long as the sentence given co-defendant Helene Alpert, and because the district court believed that the Sentencing Guidelines did not adequately consider the extent of Carl's fraudulent activity. We hold that the district court erred in enhancing the Alperts' sentences and in departing upward in sentencing Carl.

## I. STATEMENT OF FACTS

On September 12, 1990, a grand jury returned a 42 count indictment against Carl and Helene Alpert, alleging that between February 1984 and the September 1990 the Alperts had engaged in a scheme to defraud various financial services companies through the use of fraudulently obtained credit cards and false loan applications.

Several months before being indicted, the Alperts had engaged in plea negotiations with the office of the United States Attorney in Atlanta. Before reaching a plea agreement, the Alperts left the Atlanta area without leaving a change of address with the postal service, their landlord or any other creditor. However, while away from Atlanta, the Alperts did maintain communication with Carl's attorney. Although Carl's attorney was in contact with the Assistant United States Attorney (the "AUSA") handling the case, the AUSA never notified Carl's attorney that a grand jury had returned an indictment against the Alperts or that a warrant had been issued for their arrest.

Shortly after the grand jury returned the indictment, Helene was stopped by police officers in Santa Clara, California. The police officers had reason to believe that the automobile she was driving had been fraudulently leased by Carl. Helene provided the police with true and correct identification. However, because those officers did not discover the existence of the outstanding warrants against her, Helene was not arrested. Upon learning of the warrant, Helene voluntarily returned to Atlanta where she appeared twice for fingerprinting and handwriting exemplars. The police officers, however, did arrest Carl for fraudulently leasing the automobile Helene had been driving. When arrested, Carl gave police a false name. In addition, the police discovered other false identification materials when they arrested Carl.

Both Carl and Helene entered guilty pleas. In the presentence investigation report, the probation officer recommended that Carl and Helene both receive a two level enhancement for obstruction of justice. The probation officer based the recommendation on the fact that Carl and Helene had left for California during ongoing plea negotiations and used false identification while in California. The district court adopted the probation officer's recommendation over the objections of Carl and Helene, enhancing each of their sen-

tences by two levels. In addition, the district court made a three level upward departure from the Sentencing Guidelines in computing Carl's sentence: two levels for the extent of Carl's fraudulent activity and one additional level departure because the district court thought Carl's sentence should be twice as long as Helene's sentence.

## II. DISCUSSION

### A. Enhancement for obstruction of justice

The Sentencing Guidelines mandate a two level enhancement "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." United States Sentencing Commission, *Guidelines Manual* § 3C1.1 (1990) (hereinafter "U.S.S.G.").[1] The district court enhanced the sentences of both Carl and Helene by two levels after concluding that "the defendants' leaving town in the middle of plea negotiations without notifying the government and their use of phony names in California once they got there constitutes an obstruction of justice."

■■■ Whether the district court properly applied the obstruction of justice enhancement is a mixed question of law and fact. *United States v. Burton*, 933 F.2d 916, 917 (11th Cir.1991) (per curiam). "Although the district court's findings of fact are reviewed under a clearly erroneous standard, the court's 'application of law to those facts is subject to de novo review.'" *Id.* (quoting *United States v. Huppert*, 917 F.2d 507, 510 (11th Cir.1990)). Additionally, because the question on appeal, whether the Alperts' conduct constitutes willful obstruction, turns primarily on the legal interpretation of a Sentencing Guideline term, this Court's review is de novo. *See Burton, supra*, 933 F.2d at 917 (question of whether "mere flight" constitutes willful obstruction reviewed de novo).

The district court's finding that Carl and Helene left Atlanta for California while engaged in plea negotiations is amply supported by the record, as is the district court's finding that Carl used a "phony name" while in California. Indeed, the evidence is undisputed that Carl used false identification to lease an automobile while in California and that Carl provided police officers with false identification when arrested. However, the district court's finding that Helene used a "phony name" while in California is clearly erroneous. There is no evidence in the record that Helene used anything other than her true and correct name while she was away from the Atlanta area. Thus, this Court must determine whether Helene's exodus alone, or Carl's exodus in conjunction with the use of false identification, constitutes willful obstruction.

■■ The commentary to section 3C1.1 makes clear that Carl's use of false identification does not constitute willful obstruction. Note 4(a) provides that "providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense" does not constitute willful obstruction. The district court did not find, nor is there any evidence to support a finding, that Carl's use of a false name actually hindered the investigation. Accordingly, the district court erred in relying on this ground to enhance Carl's sentence.

Whether Carl and Helene's departure from the Atlanta area during plea negotiations constitutes willful obstruction of justice presents a novel issue that has not been considered by this Court and is not addressed by the commentary to the Sentencing Guidelines. However, our analysis of section 3C1.1 set forth in *Burton, supra*, 933 F.2d at 917–18, provides some guidance. In *Burton*, we held that mere flight does not constitute willful obstruction, reasoning that the "mens rea require-

---

**1.** The 1990 edition of the U.S.S.G. contained the sentencing guidelines in effect at the time of the Alperts' sentencing. *See United States v. Stinson*, 943 F.2d 1268, 1270 n. 1 (11th Cir.1991) ("sentencing courts are to apply the guidelines and policy statements that are in effect on the date the defendant is sentenced").

ment of *willfully* obstructing or attempting to obstruct the administration of justice ... 'requires that the defendant act with the *purpose* of obstructing justice.'" *Id.* (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990)) (emphasis in original). *See also* U.S.S.G. § 3C1.1, comment. (n. 4(d)) ("avoiding or fleeing from arrest" does not warrant obstruction of justice enhancement).

■ There is no evidence in the record that the Alperts acted with the purpose of obstructing justice. After leaving the Atlanta area, the Alperts were in continual contact with Carl's lawyer. Carl's lawyer was never informed that an arrest warrant had been issued for the Alperts' arrest. Once Helene learned of the warrant, she voluntarily returned to Atlanta and submitted fingerprints and handwriting exemplars to the grand jury. Carl was unable to return voluntarily because he had already been arrested by the California authorities when he learned of the arrest warrant. Given these facts, we conclude that the Alperts' actions were not undertaken with the purpose of obstructing justice. *Cf. United States v. Sanchez*, 928 F.2d 1450, 1458–59 (6th Cir.1991) (abandonment of apartment after arrest of codefendant does not constitute obstruction of justice); *United States v. Madera–Gallegos*, 945 F.2d 264, 267–68 (9th Cir.1991) (nine month absence from jurisdiction does not constitute obstruction of justice).

■ The government asks us to focus on the time lag between contact with authorities and flight. Under the government's proposed interpretation of section 3C1.1, only suspects who flee during the immediate aftermath of a crime would not be subject to an obstruction of justice enhancement. All other flight would warrant an obstruction enhancement. In support of its view, the government cites *United States v. Mondello*, 927 F.2d 1463, 1466–67 (9th Cir.1991), where the Ninth Circuit held that a suspect who "played a cat and mouse game of avoiding authorities" for two weeks willfully obstructed justice. While the time lag between the commission of a crime and flight may be some indication of a defendant's purpose in fleeing, it is not dispositive. Indeed, the facts at issue in *Mondello* support the conclusion that the defendant in *Mondello* acted with the purpose of obstructing justice. The defendant there knew that a warrant had been issued for his arrest, and had agreed to voluntarily surrender to the authorities. However, after agreeing to surrender, the defendant evaded the authorities for two weeks, and when the defendant was finally located he fled from his car. *Id.* at 1466. In contrast, at no time after the Alperts left Atlanta did they know that an arrest warrant had been issued. Carl was not aware of the warrant until his arrest by the California authorities, and as soon as Helene was aware of the warrant, she voluntarily surrendered. In addition, throughout the period of their absence, they were in contact with Carl's lawyer, who was never informed that an arrest warrant had been issued.[2]

## B. Upward departure

A district court may not depart from the sentencing range mandated by the Sentencing Guidelines, "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West Supp.1992). In determining whether a factor was adequately taken into consideration, the sentencing court may consider only the Guidelines, policy statements, and official commentary. *Id.*

---

**2.** The government argues that even if the district court erred in applying an obstruction of justice enhancement to Helene's sentence, it need not be set aside because the sentence she received is within the range prescribed for her offense without the two-level enhancement. We must vacate any sentence imposed as a result of an incorrect guideline application. *See* 18 U.S.C.A.

§ 3742(f) (West Supp.1992). Because Helene's sentence was based on an incorrect enhancement for obstruction of justice, this Court must vacate Helene's sentence. *See United States v. Giltner*, 889 F.2d 1004, 1009 (11th Cir.1989) (remanding case for resentencing even though length of incorrect sentence fell within range of correct sentence).

■ We perform a three-step analysis in reviewing upward departure cases. First, we consider de novo whether the Sentencing Guidelines consider the particular factor relied upon by the district court. If we determine that the factor is not considered by the Guidelines, we must then decide whether consideration of the factor is consistent with the Guidelines. Second, we review the district court's factual determination that the aggravating factor exists under the clearly erroneous standard. Finally, if the factor was properly taken into account by the district court, we determine whether the extent of the departure was reasonable, giving due deference to the district court. *United States v. Valle*, 929 F.2d 629, 631 (11th Cir.) (per curiam), cert. denied, —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991).

### 1. *Upward departure to correct sentencing disparity*

■ The district court departed upward one level to ensure that Carl's sentence would be twice as long as Helene's. In *United States v. Chotas*, 968 F.2d 1193 (11th Cir.1992) (per curiam), we reviewed a similar departure based on the district court's belief that the Sentencing Guidelines failed to account for the fact that one co-defendant was more culpable than the other co-defendant. There we held that "insufficient disparity" in the sentences of co-defendants represents an improper ground for departure. *Id.* at 1198. In reaching that holding, we noted that the Sentencing Guidelines were structured to account for relative culpability, and that this structure demonstrated that "the Sentencing Commission fully anticipated sentencing disparity between defendants involved in the same offense." *Id.* at 1197. Accordingly, under our holding in *Chotas*, the district court's upward departure to account for Carl's higher level of culpability was error.

### 2. *Upward departure for extent of Carl's fraudulent conduct*

■ In addition to the one level reconciliation departure, the district court made a two level departure because of the extent of Carl's fraudulent conduct. The district court based its two level upward departure on two factors: the number of acts of fraudulent conduct and the length of time of the fraudulent conduct. Because both of these factors are considered by the Guidelines, the district court's upward departure was improper.

As part of his sentence, Carl received a two level enhancement for "more than minimal planning." U.S.S.G. § 2F1.1(b)(2). The Sentencing Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in simple form," and point out that " 'more than minimal planning' is deemed present in any case involving repeated acts over a period of time." U.S.S.G. § 1B1.1, comment (n. 1(f)). Because the "more than minimal planning" enhancement encompasses repeated acts over a period of time, the district court erred in departing upwards.

## III. CONCLUSION

For the foregoing reasons, we VACATE the sentences of Carl and Helene Alpert, and REMAND the cases for resentencing.

BLACK, Circuit Judge, specially concurring:

Although I concur in the majority's judgment vacating the sentences imposed on Appellants Carl and Helene Alpert, I write separately for two reasons. First, I believe that on remand the district court should be permitted to determine whether the Alperts' sentences should be enhanced for obstruction of justice. Second, I do not agree that the two-level upward departure the district court imposed on Carl Alpert based on the duration and extent of his fraudulent activity is precluded simply by the "more than minimal planning" adjustment. Rather, I believe the upward departure should be vacated because the Sentencing Commission discussed in some detail when an upward departure in a fraud case may be appropriate and this is not such a case.

## I. BACKGROUND

Because the majority's summary omits some detail which would support a finding that the Alperts intended to obstruct justice, I begin by reviewing the facts.

The United States initiated an investigation in 1988 into credit card and credit-related fraud being committed by Carl and Helene Alpert. In February 1990, the government located, served subpoenas on, and questioned the Alperts. Plea negotiations were scheduled for March and April 1990. Both the government and the Alperts understood that an indictment was being withheld while the attorneys sought to negotiate a sentence [1] and then proceed by information.

After the first meeting in March, but before the last scheduled meeting in April, the Alperts disappeared from Georgia. They withdrew their child from school without notifying school officials. They did not leave a forwarding address with the post office, their landlord, their creditors, Helene's mother, or the government. There is no evidence that anyone knew where the Alperts had moved.[2] In any event, the government was unable to locate them. Shortly thereafter arrest warrants were issued for each of the Alperts.

Unable to proceed by information because the Alperts had vanished and plea negotiations had consequently ended, the government presented its case to a grand jury. In September 1990, Carl and Helene Alpert were indicted. Carl was charged in forty-one counts, Helene in five.

Fortuitously, eight days after the indictment issued, Carl Alpert was arrested in California, where the Alperts had moved, for fraudulently leasing an automobile. When apprehended, Carl provided a false name to police. The police discovered dozens of false documents when they searched the Alperts' home, indicating that the Alperts had continued to engage in credit card and credit-related fraud after moving to California.

The police eventually determined that warrants for the Alperts' arrest were outstanding in Georgia. Helene Alpert was permitted to return to Atlanta on her own. Carl Alpert was transported across the country in custody.

In July 1991, Carl pled guilty to forty counts and Helene pled guilty to two counts. The district court found that the Alperts defrauded eight financial institutions of almost half a million dollars between 1984 and 1990.

---

**1.** Carl Alpert's attorney said:
These were days when we thought we could *sit down and draft what the guideline application* would be, and we actually sat down and I said he will get two points for this and no points for this, and somehow we actually deceived ourselves into believing we would just submit that to a judge and that's how it would come out, and since then we learned you can't do that....

**2.** The majority states that "[a]fter leaving the Atlanta area, the Alperts were in continual contact with Carl's lawyer." *My review of the record leads me to a different conclusion.*
At the sentencing hearing on October 16, 1991, the Assistant United States Attorney said:
The government did look for these people *during that time period* but didn't communicate with their lawyers because it became clear from my discussions with [their attorneys] that they didn't know necessarily where they were, or [Carl Alpert's attorney] I think at one point in time told me he might know where they were, but they weren't about to tell me
....

Carl Alpert's attorney responded:
I object to that being [the Assistant United States Attorney's] speculation that I didn't know [where the Alperts were], and I'm not going to affirm or deny that, and I don't want you to infer based on my refusal to do so that I didn't know where they were.... If I did know where he was, that's my business and my client's business, and it's not the government's business, and I suggest it is not a basis for the court to make its decision.
At the sentencing hearing on October 23, 1991, Carl Alpert's attorney acknowledged only that Carl "had communicated with me" after he left Georgia.
These statements are too equivocal to permit an appellate court reading a cold record to determine whether the Alperts were or were not in "continual contact" with Carl's attorney. At the least, it is impossible to determine whether Carl's attorney knew where to reach the Alperts since even his later statement indicates only that Carl Alpert was able to contact him.

## II. DISCUSSION

The first issue in this case is whether the district court erred in enhancing the Appellants' sentences two levels for obstruction of justice. The United States Sentencing Guidelines (Sentencing Guidelines or U.S.S.G.) provide that a defendant's sentence may be enhanced two levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1 (1990). In this circuit, a district court must find that a defendant " 'consciously act[ed] with the *purpose* of obstructing justice.' " *United States v. Burton*, 933 F.2d 916, 918 (11th Cir.1991) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990)). Instinctive flight from law enforcement officers, for example, generally will not constitute obstruction of justice because intent is absent. *See Burton*, 933 F.2d at 918.

Here, the district court enhanced the sentences of both Carl and Helene Alpert based on the following findings of fact and conclusions of law:

> With respect to the Defendants' objection to the obstruction of justice determination, I will overrule the objection. It seems to me that the defendants leaving town in the middle of plea negotiations without notifying the government and their use of phony names in California once they got there constitutes an obstruction of justice since I infer that it slowed down the criminal process.

Because the district court focused only on the effect of the Alpert's move and did not address their intent, I agree with the majority that the enhancement for obstruction of justice should be vacated. Unlike the majority, however, I would remand the case with directions to the district court to determine whether the Alperts consciously acted with the purpose of obstructing justice.

I believe there is enough evidence for the district court to find that the Alperts intended to obstruct or impede the administration of justice. The district court might reasonably infer from the circumstances surrounding the Alperts' move to California and from their conduct after they arrived that the Alperts intended to continue their criminal activity and to avoid prosecution and punishment altogether. The innocent explanation for the Alperts' behavior that the majority embraces is not the only reasonable one. Determination of the Alperts' intent is a factual question for the district court, not a legal question for this Court.

A second issue in this case—whether the district court erred in departing upward two levels when it sentenced Carl Alpert based on its conclusion that the Sentencing Guidelines do not adequately account for the duration and extent of the fraud—also merits comment.

Departure from the range established by the applicable guideline is appropriate if the district court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Conversely, "it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range...." *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341, 353 (1992).

Here, the district court departed upward two levels when sentencing Carl Alpert after concluding that the Sentencing Guidelines do not adequately account for the "very large number of affirmative acts ... that covered so many years, four to five years, and involved so many victims." The district court concluded that the table in U.S.S.G. § 2F1.1, which is based on the dollar amount of the fraud, did not adequately capture the "social harm" caused. Other circuits considering upward departures in major fraud cases have split. *Compare United States v. Benskin*, 926 F.2d 562 (6th Cir.1991) (5–year scheme in which over 600 victims lost more than $3.8 million warranted upward departure) and

*United States v. Burns,* 893 F.2d 1343 (D.C.Cir.1990) (6–year scheme involving 53 separate acts of fraud warranted upward departure which was not precluded by "more than minimal planning" adjustment), *rev'd on other grounds,* — U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) *with United States v. Boula,* 932 F.2d 651 (7th Cir.1991) (upward departure in case involving 8–year scheme in which over 3000 victims were defrauded of more than $7 million not warranted based on amount of fraud loss and number of victims; upward departure permitted based on superseded commentary to Sentencing Guidelines).

The majority holds that the Sentencing Guidelines already account for the fraudulent activity evident in this case, pointing to U.S.S.G. § 2F1.1(b)(2)(A), which requires a two-level enhancement where the fraud involved "more than minimal planning." As the majority notes, more than minimal planning is "deemed present in any case involving repeated acts over a period of time."[3] *Ante* at 459. I am not convinced that the "more than minimal planning" adjustment bars an upward departure in this case.[4]

The Sentencing Commission discussed in some detail when an upward departure in a fraud case may be appropriate. Upward departures in cases involving more than minimal planning are not prohibited. According to the Sentencing Commission, an upward departure might be appropriate if:

(a) the primary objective of the fraud was non-monetary;

(b) false statements were made for the purpose of facilitating some other crime;

(c) the offense caused physical or psychological harm;

(d) the offense endangered national security or military readiness;

(e) the offense caused a loss of confidence in an important institution; or

(f) completion of the offense was prevented, or the offense was interrupted before it caused serious harm.

U.S.S.G. § 2F1.1, comment 9. Each of these is a characteristic that generally will not be captured by the monetary loss caused by the offense. The three factors relied upon by the district court—number of acts, number of victims, and duration of the fraud—are characteristics that typically are reflected in the monetary loss caused by the fraud.[5] I would instead hold that the upward departure must be vacated because the Sentencing Guideline's dollar loss table adequately captures the harm caused by the fraud in this case.

### III. CONCLUSION

I would vacate the sentences and remand the case with directions to the district court to determine whether the Appellants' purpose in moving from Georgia to California was to obstruct justice and to resentence Appellants accordingly.

---

**3.** Because the district court also relied on the number of victims involved, the majority also presumably bases its holding on U.S.S.G. § 2F1.1(b)(2)(B), which requires a two-level enhancement when more than one victim was defrauded.

**4.** The D.C. Circuit, for example, has held that the "more than minimal planning" adjustment does not preclude a district court from departing upward based on the duration of the *execution* of a scheme to defraud. *Burns,* 893 F.2d at 1346.

**5.** When it "elected to factor the sentencing level according to the total loss, not the number of victims," *United States v. Boula,* 932 F.2d at 656, the Sentencing Commission also suggested how complex fraud could be fit into the fraud loss table. A sentencing court may estimate the amount of loss "based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as *the nature and duration of the fraud* and the revenues generated by similar operations." U.S.S.G. § 2F1.1, comment 8 (emphasis added).