**UNITED STATES of America, Appellee,**

v.

**Andrew STROUD, Defendant–Appellant.**

**No. 376, Docket 89–1258.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1989.

Decided Jan. 8, 1990.

Robert E. Precht, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant.

Michael G. Considine, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG and MESKILL, Circuit Judges, and COFFRIN,[*] District Judge.

MESKILL, Circuit Judge:

The sole issue raised by this appeal, and one that has not previously been decided in this Circuit, is whether flight from an arresting officer constitutes "obstruction of justice" within the meaning of section 3C1.1 of the Federal Sentencing Guidelines, 18 U.S.C.A. App. (West Supp.1989) ("Sentencing Guidelines" or "Guidelines"). Defendant-appellant Stroud appeals the sentence imposed by the United States District Court for the Eastern District of New York, Raggi, J., pursuant to the Sentencing Reform Act of 1984 (as amended), 18 U.S.C. § 3551 et seq. and 28 U.S.C. § 991 et seq., following his plea of guilty to three counts of bank burglary in violation of 18 U.S.C. § 2113(a). The district court sentenced Stroud to twenty-four months imprisonment followed by twenty-four months of supervised release. On appeal, Stroud does not contest the underlying conviction, but claims that the district court erred by adjusting upward his offense level by two levels for obstructing justice. Specifically, Stroud contends, and we agree, that flight from arrest, in itself, does not constitute obstruction of justice under Sentencing Guidelines § 3C1.1.

We vacate the sentence of the district court and remand for resentencing.

## BACKGROUND

Pursuant to a plea agreement with the government, appellant Stroud, on February 3, 1989, pleaded guilty to three counts of bank burglary in violation of 18 U.S.C. § 2113(a). Following a presentence investigation, the Probation Department prepared a presentence report pursuant to Guidelines § 6A1.1.

In calculating Stroud's sentence under the Guidelines, the Probation Department first determined that a base offense level of twelve for each offense was appropriate. See Guidelines § 2B2.2 ("Burglary of Other Structures"). With respect to Count One, the base level was increased by one level to reflect a loss to the bank of between $2,501 and $10,000, id. §§ 2B2.2(b)(2), 2B2.1(b)(2), yielding an adjusted offense level of thirteen. With respect to Count Two, the base level was increased by two levels to reflect a loss of between $10,001 and $50,000, id. §§ 2B2.2(b)(2), 2B2.1(b)(2), and by an additional two levels for "obstruction of justice," id. § 3C1.1, yielding an adjusted offense level of sixteen. The upward adjustment for obstruction was based solely on Stroud's vigorous efforts to avoid capture. Appellant's post-detection activities, as recounted in the presentence report, are as follows:

> [Stroud] made extraordinary efforts to flee after he realized that he was detected by the police. The defendant fled the bank, ran across rooftops, removed his jacket and hid under a boat. When apprehended by an officer, he pulled loose twice, jumped a fence and was arrested only after he ran into traffic, blocks away, and was surrounded by police. During the flight, the defendant was pursued by numerous officers and a police dog.

With respect to Count Three, the base level was increased by one level to reflect the loss, id. §§ 2B2.2(b)(2), 2B2.1(b)(2), and also by two levels because a vehicle was stolen in preparation for the bank burglaries, id. § 2B2.2(b)(1), yielding an adjusted offense level of fifteen. As the three counts were not grouped together as "closely-related," see id. § 3D1.2, a "combined offense level" of nineteen was then calculated by increasing the highest offense level of sixteen (Count Two) by three additional levels, see id. § 3D1.4. Finally,

---

[*] Honorable Albert W. Coffrin, United States District Judge for the District of Vermont, sitting by designation.

the combined offense level of nineteen was decreased by two levels for appellant's "acceptance of responsibility." *Id.* § 3E1.1. Thus, combining Stroud's adjusted offense level of seventeen with his Category I criminal history resulted in a guideline-specified sentencing range of twenty-four to thirty months imprisonment.

In both a letter dated April 20, 1989 and again at sentencing, Stroud objected to the two-level enhancement for obstruction of justice, arguing that Guidelines § 3C1.1 was applicable only to the willful removal or falsification of evidence, rather than an attempt to avoid apprehension. Appellant suggested, *inter alia*, that if the section 3C1.1 enhancement for obstruction of justice had not been made, his net adjusted offense level would have been sixteen, thus yielding a sentencing range of twenty-one to twenty-seven months and potentially reducing his term of imprisonment by three months.

In response to this argument, Judge Raggi stated at the sentencing hearing that "I understand obstruct to really relate to anything that can make it more difficult to carry out a just result in a criminal case, whether this means that one puts documents in a shredder or whether it means that a defendant himself attempts to flee to prevent his arrest." Consequently, the district court accepted the Probation Department's recommendation that Stroud's offense level be upwardly adjusted by two levels for obstruction of justice and, on May 18, 1989, sentenced Stroud to the "minimal period within the [G]uidelines," *i.e.*, three concurrent terms of twenty-four months imprisonment.[1] This appeal followed.

### DISCUSSION

Guidelines § 3C1.1, entitled "Willfully Obstructing or Impeding Proceedings," provides that: "If the defendant *willfully* impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels." (emphasis added). Judge Raggi, equating Stroud's flight to avoid apprehension with willful obstruction, adopted the presentence recommendation and increased appellant's base offense level with respect to Count Two by two levels. Stroud, however, argues that a section 3C1.1 adjustment for obstruction is "not intended to apply to flight because the desire not to be caught is basic to almost all criminal behavior." Specifically, appellant contends both that "[t]he obstruction adjustment was intended to apply only to acts aimed at undermining the accuracy of the fact-finding process," and that "[a] defendant must have more than the general intent not to be caught; he must have the specific intent to corrupt the truth-finding process." Although we decline the invitation to adopt appellant's narrow interpretation of section 3C1.1, we do agree that mere flight from arrest, by itself, does not constitute obstruction within the ambit of Guidelines § 3C1.1.

### A. *Standard of Review*

Under the Sentencing Reform Act of 1984 (as amended), 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. § 991 *et seq.*, appellate review of a sentence is governed by section 3742(e), which provides, in pertinent part:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give *due deference* to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (emphasis added). While the adoption of the "due deference" standard of review was "intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity," the legislative history makes clear that

> [t]he deference due a district court's determination will depend upon the relationship of the facts to the guidelines standard being applied. If the particular

---

1. Stroud was also sentenced to a term of twenty-four months of supervised release, a mandatory $150 special assessment, and ordered to pay $550 in restitution.

determination involved closely resembles a finding of fact, the court of appeals would apply the clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988) (analysis of Minor and Technical Criminal Law Amendments to Title VII, Subtitles B & C, Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181, 4416–18 (1988)).

■ Thus, while a district court's determination of whether a defendant obstructed justice is typically reviewed as a factual finding under the clearly erroneous standard, *see United States v. McDowell,* 888 F.2d 285, 292 (3d Cir.1989); *United States v. Cain,* 881 F.2d 980, 982 (11th Cir.1989); *United States v. Rivera,* 879 F.2d 1247, 1254 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989), the issue here—does mere flight from a crime scene constitute willful obstruction—turns primarily on the legal interpretation of a guideline term. Consequently, our review is *de novo. See, e.g., United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989) ("[s]ections 3742(e)(1) and (e)(2) clearly call for a *de novo* review when the appellate court is addressing purely legal issues").

### B. *Analysis*

■ As written, Guidelines § 3C1.1 contains a clear *mens rea* requirement that limits its scope to those who "willfully" obstruct or attempt to obstruct the administration of justice. Although " 'willful' is a word 'of many meanings, [with] its con-

struction often … influenced by its context,' " *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) (plurality opinion) (quoting *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)), we are convinced that the word "willfully," as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice. We therefore hold that mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement.[2] Accordingly, the district court's conclusion that "obstruct," in this context, "relate[s] to anything that can make it more difficult to carry out a just result in a criminal case" was erroneous as a matter of law.

Our interpretation is reinforced by the commentary to section 3C1.1, which explains that:

This section provides a sentence enhancement for a defendant who engages in conduct *calculated* to mislead or deceive authorities or those involved in a judicial proceeding, or to otherwise *willfully* interfere with the disposition of criminal charges, in respect to the instant offense.

**Application Notes:**

1. The following conduct, while not exclusive, may provide a basis for applying this adjustment:

(a) destroying or concealing material evidence, or attempting to do so;

(b) directing or procuring another person to destroy or conceal material evidence, or attempting to do so;

---

**2.** In a related context, it is noteworthy that the federal obstruction of justice statute, 18 U.S.C. § 1503, has never been interpreted to apply to flight from arrest. *See, e.g., Pettibone v. United States,* 148 U.S. 197, 207, 13 S.Ct. 542, 546–47, 37 L.Ed. 419 (1893) ("specific intent to violate the [federal obstruction of justice] statute must exist to justify a conviction"); *United States v. Jeter,* 775 F.2d 670, 679 (6th Cir.1985) ("one must impede the due administration of justice with the general intent of knowledge *as well as the specific intent of purpose to obstruct"), cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986); *United States v. Moon,* 718 F.2d 1210, 1236 (2d Cir.1983) ("[s]pecific intent to

impede the administration of justice is an essential element of a § 1503 violation"), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). *See generally* 67 C.J.S. *Obstructing Justice* § 4 (1978 & 1989 Supp.) (collecting cases). Furthermore, the Bail Reform Act, 18 U.S.C. § 3142, explicitly draws a distinction between flight and obstruction of justice. Section 3142(f)(2) provides, in pertinent part, that pretrial detention may be ordered in any case involving "(A) a serious risk that the [defendant] will flee; *or* (B) a serious risk that the [defendant] will obstruct or attempt to obstruct justice…." *Id.* § 3142(f)(2) (emphasis added).

(c) testifying untruthfully or suborning untruthful testimony concerning a material fact, or producing or attempting to produce an altered, forged, or counterfeit document . . . ;

(d) threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness or juror . . . ;

(e) furnishing material falsehoods to a probation officer. . . .

Guidelines § 3C1.1 commentary (emphasis added). The commentary neither explicitly includes flight from an arresting officer nor implicitly indicates that mere flight, without more, justifies an obstruction adjustment. Thus, while the list of potentially obstructive conduct in the commentary is nonexclusive, it expressly limits application to a defendant who either "willfully interfere[s]" with the disposition of criminal charges" or engages in conduct "calculated to mislead or deceive."

Here, the purpose of Stroud's flight was not a deliberate pre- or post-arrest attempt to frustrate or impede an ongoing criminal investigation, as in the case of an individual who flees while being sought for questioning some time after the commission of a crime. Nor is this a case where instinctual flight, due to its duration or acts occurring in the course thereof, ripens into a willful attempt to impede or obstruct the administration of justice. *See United States v. Tellez*, 882 F.2d 141, 143 (5th Cir.1989) (defendant's attempted vehicular escape from custody, "which endangered not only the life of the arresting officer but the lives of innocent bystanders, and his vigorous efforts to resist arrest . . ., provide adequate support for the trial court's finding of obstruction"). Rather, Stroud's flight appears to have been a natural attempt to avoid apprehension, not a willful attempt to impede or obstruct justice within the purview of section 3C1.1.[3] We therefore conclude that the two-level increase in Stroud's base offense level for obstruction of justice was improper.

Contrary to the government's contention, our interpretation of Guidelines § 3C1.1 will *not* necessarily equate, for purposes of sentencing, a defendant who attempts to avoid prosecution by fleeing with a defendant who voluntarily surrenders to the authorities. While Congress, in enacting the Sentencing Reform Act, sought to achieve honesty, uniformity and proportionality in sentencing, *see* Guidelines (Policy Statement), the sentencing judge is clearly vested with the discretion to impose any term of imprisonment within the applicable guideline-specified range, *see id.* § 5C2.1(a). Therefore, a defendant who flees in order to avoid apprehension may be sentenced to the maximum term within the applicable guideline range, while one who voluntarily surrenders may be sentenced to the minimum. Moreover, the Sentencing Reform Act permits a court to depart from a guideline-specified sentence when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); *see United States v. Cervantes*, 878 F.2d 50, 53 (2d Cir.1989); *United States v. Sturgis*, 869 F.2d 54, 56 (2d Cir.1989); *United States v. Correa–Vargas*, 860 F.2d 35, 37 (2d Cir.1988). Circumstances that may warrant departure from the Guidelines pursuant to this provision include "Death" (Guidelines § 5K2.1), "Physical Injury" (Guidelines § 5K2.2) and "Property Damage or Loss" (Guidelines § 5K2.5). Consequently, in the event that an officer was either assaulted or killed in the course of pursuit, or in the event that property damage occurred, an upward departure from the applicable guideline range would clearly be warranted.

---

**3.** In this regard, we note that the government's reliance on *United States v. Cain*, 881 F.2d 980 (11th Cir.1989), and *United States v. Brett*, 872 F.2d 1365 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989), is misplaced. In *Cain*, the Eleventh Circuit upheld a section 3C1.1 enhancement because the defendant, during flight from the pursuing officers, attempted to destroy or conceal evidence by discarding a cap containing stolen checks. 881 F.2d at 982. In *Brett*, the Eighth Circuit similarly upheld a two-level adjustment for obstruction because the defendant intentionally misled the arresting officers by furnishing a false name upon arrest. 872 F.2d at 1372–73.

## CONCLUSION

As the two-level increase in Stroud's base offense level for obstruction of justice was improperly based on mere flight from arresting officers, we vacate Stroud's sentence and remand the matter to the district court for resentencing.