952 F.2d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leon PAKULSKY, Defendant-Appellant.
 No. 90-10508.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided Jan. 15, 1992.
 
 Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Appellant, Leon Pakulsky, appeals his sentence following a guilty plea to two counts of interstate transportation of property taken by fraud. Pakulsky contends that the district court erred in: (1) considering the amount of loss resulting from conduct for which he was not charged or convicted in determining his base offense level; (2) enhancing his base offense level for obstruction of justice; (3) denying a reduction in his base offense level for acceptance of responsibility; and (4) ordering restitution for losses related to dismissed or uncharged offenses.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 On November 25, 1986, Leon Pakulsky was indicted in the District of Arizona for five counts of wire fraud in violation of 18 U.S.C. § 1343. He pled guilty to count 1, and the remaining counts were dismissed. On March 23, 1987, Pakulsky was sentenced to three years incarceration. This sentence was modified on August 27, 1987 and corrected on March 24, 1988 to provide for a five years suspended sentence on the conditions that six months be served in a jail-type facility and the remainder on probation.
 
 
 4
 In January 1989, while on probation for the above offense, Pakulsky purchased Mission Travel Agency in Phoenix, Arizona. In March, 1989, in violation of his probation, Pakulsky travelled to New York and opened a second office in which he implemented a program whereby he would sell airline tickets at a twenty-five percent discount and issue $50-off gift certificates. The airline tickets sold through this program were generated in Phoenix, and Federal Expressed back to New York City.
 
 
 5
 Because of the above program, Mission Travel was unable to pay the airlines for the full ticket price. In July, 1989, American Airlines complained that Mission Travel had failed to report and pay for thousands of dollars in ticket sales. The Airline Reporting Corporation (A.R.C.), a sales agent for numerous domestic and foreign airlines, then conducted an audit of Mission Travel which revealed that by August 8, 1989, Pakulsky had failed to pay airline carriers over $500,000 worth of the tickets sold. Pakulsky also failed to repay a loan from Security Pacific Bank in the amount of $35,000, failed to repay charges made on an American Express card in the amount of $27,502.49, and caused a large deficit in the amount of $118,655.77 at Valley National Bank where Pakulsky kept the agency bank accounts. Pakulsky also owed Don Meyers, the original owner of Mission Travel, $65,984. The total loss due to Pakulsky's actions was $772,483.36.
 
 
 6
 On October 16, 1989, Pakulsky was arrested in New York City for violating his probation and was subsequently incarcerated at the Metropolitan Correction Center in New York City. On May 7, 1990, the government filed a two-count information in the District of Arizona charging Pakulsky with interstate transportation of property taken by fraud in violation of 18 U.S.C. § 2314. Count 1 charged that on August 8, 1989, Pakulsky knowingly and willfully caused $7,327.81 in airline ticket stock to be transported from Arizona to New York knowing the stock had been taken by fraud. Count 2 charged that on August 21, 1989, he caused an additional $6,904.77 in airline ticket stock to be similarly transported. On the same date Pakulsky entered into a written plea agreement with the government under which he waived indictment and plead guilty to both counts of the information.
 
 
 7
 Subsequent to the above plea agreement the government provided the probation department with summaries of tape-recorded telephone conversations that Pakulsky had with his wife, Robin, and his aunt, Ana Goldring, during October, 1989, while he was being detained at the Metropolitan Correctional Center. In these conversations, Pakulsky asked Ana Goldring to transfer money out of an account at Banco Consolidado and a stock account and to send some checks to his daughter to hold for a lawyer. Pakulsky also told Robin not to tell the police anything and that if Detective Stahl asked about Transamerica to tell him she does not know anything. These calls had been tape-recorded pursuant to the correctional center's policy of monitoring and recording all outgoing telephone calls made by prisoners (other than properly placed calls to an attorney). Upon entering the correctional center, Pakulsky was notified in writing of the center's policy of monitoring prisoner's telephone calls and signed an acknowledgment of this policy. The correctional center also posted a sign near the telephones notifying the prisoners of this policy.
 
 
 8
 Hearing on the final disposition of the probation violation proceeding (CR 86-331-PHX-PGR) and on sentencing for the violations of 18 U.S.C. § 2314 (CR-90-166-PHX-PGR) occurred on September 10, 1990. In the probation violation proceeding, the court revoked Pakulsky's probations and committed him to the custody of the Attorney General for imprisonment for the remainder of his previously suspended five year sentence.
 
 
 9
 With regard to Pakulsky's violations of 18 U.S.C. § 2314, the court stated that the base offense level for the crime of fraud and deceit is six. The court increased this amount by ten pursuant to U.S.S.G. § 2F1.1 because the total amount of loss due the fraud was over $500,000 and the fraud involved more than minimal planning and more than one victim. The court also added a two-level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on the recorded telephone conversations between Pakulsky and his wife and aunt. Finally, the court denied Pakulsky a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.
 
 
 10
 The court sentenced Pakulsky to a term of 62 months incarceration to be served consecutively with the term imposed in the probation revocation proceeding and to a term of three years supervised release. The court also ordered Pakulsky to pay $772,483.36 in restitution and to perform 400 hours of community service. Based on the order of restitution, the court did not impose a fine.
 
 STANDARD OF REVIEW
 
 11
 The district court's application of the United States Sentencing Guidelines is reviewed de novo. United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990); United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1990). The district court's findings of facts during sentencing are reviewed for clear error. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990).
 
 DISCUSSION
 I. Total Loss Due to the Fraud
 
 12
 In United States v. Restrepo, 903 F.2d 648 (9th Cir.1990) a panel of this circuit held that under the United States Sentencing Guidelines a court could consider conduct for which a defendant was not convicted in determining the base offense level. On September 6, 1990, this circuit granted en banc review in Restrepo. 912 F.2d 1568 (9th Cir.1990). Therefore, in the hope that the panel decision would be reversed by the en banc court Pakulsky argued that, in enhancing his base offense level, the court should only have considered the $14,232.58 loss resulting from the two counts for which he was charged, not the total $772,483.36 loss resulting from acts for which he was not charged. Pakulsky, however, acknowledged that if the en banc panel affirmed Restrepo, his argument regarding aggregation of amounts involved in uncharged offenses would be foreclosed. On October 4, 1991, this court filed its en banc decision in Restrepo, limiting its review to the issue of the standard of proof required if uncharged conduct is to be considered at sentencing. The en banc court declined to interfere with the panel's holding that a court can consider uncharged conduct in determining a defendant's base offense level. In light of Pakulsky's concession, we treat his argument as foreclosed.
 
 II. Obstruction of Justice Enhancement
 
 13
 Pakulsky challenges the district court's enhancement of his base offense level by two points for obstruction of justice under U.S.S.G. § 3C1.1. First, Pakulsky argues that his telephone conversations with his aunt and his wife did not amount to obstruction of justice. He also argues that his telephone conversations with his wife are protected by the marital communications privilege and should not have been relied upon by the district court.
 
 A. Obstruction of Justice
 
 14
 Section 3C1.1 of the United States Sentencing Guidelines reads: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." A district court's determination that a defendant has obstructed justice is reviewed as a factual finding and will be overturned only if it is clearly erroneous. United States v. Mondello, 927 F.2d 1463, 1465 (9th Cir.1991); United States v. Lofton, 905 F.2d 1315, 1316 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct 365 (1990).
 
 
 15
 While detained at the Metropolitan Correctional Center Pakulsky made several telephone calls to both his aunt and his wife. In general, he told his aunt to transfer money from various accounts and advised his wife to lie to the authorities investigating the case. These calls were made while the government was still investigating the case and before any charges had been brought against Pakulsky. Thus, the district court's finding that Pakulsky willfully attempted to obstruct the administration of justice during an ongoing investigation is not clearly erroneous.[1]
 
 B. Marital Communication Privilege
 
 16
 Pakulsky next argues that, whether or not amounting to obstruction of justice, his telephone conversations with his wife are privileged communications which could not be used to support a finding that he obstructed justice.
 
 
 17
 The marital communication privilege protects statements privately communicated between spouses. In re Grand Jury Investigation of Hugle, 754 F.2d 863, 864 (9th Cir 1985). It may be asserted by either spouse. Id. Once the privilege is asserted, the communication is presumed to be confidential, and the government has the burden of demonstrating it is not confidential. Blau v. United States, 340 U.S. 332, 333 (1950); United States v. Marashi, 913 F.2d 724, 730 (9th Cir 1990); In re grand Jury Investigation of Hipes, 603 F.2d 786, 788 (9th Cir.1979).[2]
 
 
 18
 The marital communication privilege only applies to communications that are intended to be private; thus, a communication made in the presence of a third party is not privileged. Pereira v. United States, 347 U.S. 1, 6 (1953); Marashi, 913 F.2d at 730; United States v. Lustig, 555 F.2d 737, 748 (1977), cert. denied, 434 U.S. 1045 (1978). Pakulsky was clearly aware that his phone conversations were being monitored by the correctional center. A sign informing all prisoners of the monitoring was posted near the telephones. In addition, Pakulsky signed a form acknowledging that his telephone conversations would be monitored and recorded. Thus, Pakulsky's communications were not intended to be made in private and no marital privilege attached.[3]
 
 
 19
 On appeal, the government raises the question of whether the marital privilege is applicable in sentencing proceedings at all. The government points out an inconsistency between Federal Rule of Evidence 1101(c) and 18 U.S.C. § 3661. Because the government raises this argument for the first time on appeal, we decline to consider the argument at this time.
 
 III. Acceptance of Responsibility Reduction
 
 20
 U.S.S.G. § 3E1.1 allows a defendant a two-level reduction in offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct ..." Whether a defendant has accepted responsibility is a factual issue subject to the clearly erroneous standard of review. United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1991); United States v. Cooper, 912 F.2d 344, 345 (9th Cir.1990). The Commentary to § 3E1.1 states: "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." United States Sentencing Commission, Guidelines Manual § 3E1.1 (Nov. 1989) (application note 5) [hereinafter Guidelines Manual ].
 
 
 21
 Pakulsky argues that the district court erred in not granting him the reduction for acceptance of responsibility. Pakulsky notes that upon arrest he immediately admitted violating his probation, that he voluntarily answered the Assistant United States Attorney's and the case agent's questions about the case, and that he signed a plea agreement prior to indictment. Pakulsky also notes that in the plea agreement the government recommended the district court grant Pakulsky the reduction for acceptance of responsibility.
 
 
 22
 The district court, however, refused to reduce the offense level. The court first stated that obstruction of justice and acceptance of responsibility are "mutually inconsistent." The 1987 version of Application Note 4 of § 3E1.1 precluded a reduction for acceptance of responsibility where the court enhanced a sentence for obstruction of justice. See United States v. Rafferty, 911 F.2d 227, 230-31 (9th Cir.1990); United States v. Avila, 905 F.2d 295, 298 (9th Cir.1990). In November, 1989, prior to Pakulsky's sentencing, this was amended to read: "Conduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Guidelines Manual, § 3E1.1 (Nov. 1989) (application note 4). Thus, the district court was incorrect in holding, at the time Pakulsky was sentenced, that a finding of obstruction of justice necessarily precluded a finding of acceptance of responsibility.
 
 
 23
 The district court, however, also found that even if a reduction for acceptance of responsibility was possible, such reduction was not warranted in this case. The district court believed that Pakulsky's remorse was insincere. Judge Rosenblatt stated, regarding Pakulsky's criminal history:
 
 
 24
 You seem to have a rule or set of rules by which you govern your life, always to the detriment of other people. And when you're apprehended you throw up your hands and you say "I did wrong." And that's proven to be very successful for you in the past, by reviewing the types of sentences that you have received, while at the same time you have ripped off huge sums of money from a lot of innocent people in this country.
 
 
 25
 Under § 3E1.1 a defendant who pleads guilty is not automatically entitled to a reduction for acceptance of responsibility. Guidelines Manual, § 3E1.1(c) (Nov. 1989). The relevant commentary to the sentencing guidelines required a defendant to show some form of "sincere contrition," Guidelines Manual, § 3E1.1 (Nov. 1989) (application note 2), or "sincere remorse," Guidelines Manual, § 3E1.1 (Nov. 1989) (background). See United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1990). Thus, the district court's finding that Pakulsky did not sincerely accept responsibility is not clearly erroneous.
 
 IV. Restitution
 
 26
 Pakulsky finally argues that the district court's order of restitution in the amount of $772,483.36 is illegal in that it accounts for losses for which he was not charged.
 
 
 27
 In Hughey v. United States, 495 U.S. ----, 110 S.Ct. 1979 (1990) the Supreme Court held that restitution under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579 & 3580, must be limited to loss caused by the offense of conviction. In United States v. Sharp, 941 F.2d 811 (9th Cir.1991) this circuit held that the Hughey limitations on restitution apply to convictions that involve a conspiracy or scheme. Thus, the district court's order of restitution must be limited to the loss resulting from the offenses for which he was convicted. The district court's order must therefore be vacated and remanded for resentencing.
 
 
 28
 The resentence upon remand must be in accordance with the due process considerations enunciated by the Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 725-26 (1968). In North Carolina v. Pearce, the Supreme Court held that under the Due Process Clause of the Fourteenth Amendment judicial vindictiveness is prohibited. 395 U.S. at 725. The Court established guidelines in order to protect against such vindictiveness:
 
 
 29
 [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
 
 
 30
 Id. at 726. Thus, we hold that, on remand, the district court is limited to striking the illegal portion of the restitution order and may not increase any other portion of the sentence.[4]
 
 CONCLUSION
 
 31
 The sentence is VACATED and the case REMANDED for resentencing in accordance with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under § 3C1.1 the term "willfully" means that the defendant "consciously act[ed] with the purpose of obstructing justice." Lofton, 905 F.2d at 1316-17 (quoting United States v. Stroud, 893 F.2d 504, 507 (2d Cir.1990). Pakulsky argues that the telephone conversations were not a willful attempt to obstruct justice, but rather an instinctual response to his incarceration comparable to a defendant's impulsive flight to escape arrest. See Stroud, 893 F.2d 504 (a defendant's flight from arresting officers immediately following the perpetration of an offense held not to constitute obstruction of justice under § 3C1.1). Pakulsky's argument, however, is unconvincing. These telephone conversations occurred over a period of several days following his arrest and, thus, were not an immediate reaction to his arrest
 
 
 [2]
 The government notes that these cases are inconsistent with Weil v. Investment/Indicators Research & Management, 647 F.2d 18, 25 (9th Cir 1981), in which this court stated that the burden of proving any evidentiary privilege rests with the party asserting the privilege. Weil, however, involved an assertion of the attorney-client privilege, not the marital privilege. All other cases discussing the marital privilege are in agreement that the burden is on the party contesting the privilege
 
 
 [3]
 Because of our holding, we do not need to consider the government's alternative argument that the telephone conversations fall within the partnership in crime exception
 
 
 [4]
 We recognize that the district court linked its decision regarding the fine to its decision regarding restitution. However, since the parties agreed at oral argument that imposition of a fine would not be appropriate in this case, we do not consider whether a change in that part of the sentence would otherwise be proper