**UNITED STATES of America,
Appellee,**

v.

**Nelson BLAKE, Defendant–Appellant.**

**No. 02–1223.**

United States Court of Appeals,
Second Circuit.

Feb. 28, 2003.

Jeffrey G. Pittell, Great Neck, NY, for Appellant.

Tracy Lee Dayton, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Emily Berger, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

PRESENT: OAKES, KEARSE, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 28th day of February, two thousand and three.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Defendant-appellant Nelson Blake appeals from an April 3, 2002 judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge* ), convicting him, upon a plea of guilty, of possession of a firearm by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The District Court sentenced Blake to 87 months' imprisonment, three years of supervised release, and a $100 special assessment.

On appeal, Blake challenges only the District Court's imposition of a two-point sentencing enhancement for obstruction of justice. *See* U.S. Sentencing Guidelines Manual § 3C1.1 (2002). While "a district court's determination of whether a defendant obstructed justice is typically reviewed as a factual finding under the clearly erroneous standard," a district court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *See United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990). In reviewing the sentencing court's application of the Guidelines, the appellate court must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). We will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion. *See, e.g., United States v. Adelman,* 168 F.3d 84, 86 (2d Cir.1999); *United States v. Parker,* 903 F.2d 91, 103 (2d Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). Thus, we review the District Court's decision to apply § 3C1.1 to the facts of this case for abuse of discretion.

In arguing to this Court, Blake and the Government present substantially different versions of the relevant facts. Blake's version is as follows. On April 3, 2001, while waiting in Kings County Criminal Court to appear on an unrelated state misdemeanor

charge, two federal agents approached him and indicated that they wanted to speak with him. Blake voluntarily left the courthouse with these agents in their car, and they took him to a New York City police precinct. He was not informed that he was being placed under arrest, he was not placed in a jail cell, and he was not provided a copy of the criminal complaint. Instead, he was left alone in a room. Believing that he was not under arrest, he walked out of the police station.

The Government's version of the relevant facts is as follows. On March 27, 2001, a federal warrant issued for Blake's arrest for violating § 922(g)(1). On April 3, 2001, two agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") arrested Blake at Kings County Criminal Court. Upon arrest, the agents handcuffed Blake and read him his *Miranda* rights. The agents then transported Blake to the New York City Police Department ("NYPD"), 84th Precinct, for processing. One of the ATF agents searched Blake and removed his handcuffs in order to take his fingerprints. Blake was fingerprinted twice, first by the ATF and then by the NYPD. Immediately after he was fingerprinted the second time, before his handcuffs were replaced, Blake ran through the closed rear doors of the 84th Precinct, in a full sprint. ATF agents and NYPD officers chased after him and saw him enter a building in Ingersoll Houses, a residential development. The law enforcement officers conducted an exhaustive search of the Ingersoll Houses and established a perimeter around the complex. Approximately three hours later, Blake surrendered from the apartment where he had been hiding.

As these accounts indicate, the key facts that the parties dispute are whether Blake had been arrested before he left the police station and whether he was in police custody at that time. Although Blake's counsel argued at the district court sentencing

proceeding that the agents "didn't *say* [Blake] was under arrest" (Hearing Transcript ("Tr.") at 7 (emphasis added)), counsel also stated that *"what happened was* [Blake was] waiting to be appearing in the King's County Criminal Court on an open misdemeanor case, and *he was arrested* by ATF on this case while he was in the hallway."* (Tr. at 3 (emphases added); *see also id.* at 12 ("[H]e was appearing in Court, and the plea was going to be vacated. *But he was arrested before that happened."* (emphasis added))). Blake's counsel stated, *inter alia,* that the agents "took him to the Precinct [and] printed him" (Tr. at 7); and when they left him alone in a room, he walked out of the precinct.

The Government, which described Blake's departure following his arrest as a bolting from the fingerprinting room so fast that no law enforcement agents could catch him, informed the District Court at the sentencing hearing that the arresting agents were "on standby" to testify about Blake's arrest and escape. (Tr. at 10–11.) Blake's counsel, however, did not request a hearing. Indeed, he had stated his view that there was no need for an evidentiary hearing as to the manner of Blake's leaving the precinct: "I don't really think that we need to have a hearing, because the application notes and the guidelines ... say [ ] that escape from arrest does not necessarily require the imposition of an obstruction of justice enhancement." (Tr. at 7.)

After hearing argument from counsel, the court implicitly found that Blake had in fact been arrested, as it made its obstruction-of-justice ruling "[w]ith respect to the escape *from custody."* (Tr. at 11 (emphasis added).) To the extent that Blake argues now that there is a factual issue as to whether he was arrested, we conclude that he has waived this argument since, as described above, his counsel twice

stated to the District Court that while Blake was waiting to appear in state court, "he was arrested" (Tr. at 3, 12) and stated that there was no need for a hearing. Given this record, we cannot say there was any clear error in the District Court's implicit finding that Blake had been arrested.

■ To the extent that Blake sought to have the court apply Application Note 5(d) of § 3C1.1, which indicates that "avoiding or fleeing from arrest" is a less serious form of obstructive conduct that may not require application of the obstruction adjustment, we see no abuse of discretion in the District Court's determination, given its finding that this was an escape from custody, that Application Note 5(d) was less applicable than other provisions. *See* Guidelines § 3C1.1 Application Note 1 ("adjustment applies if the defendant's obstructive conduct (A) occurred during the course of the investigation ... of the defendant's instant offense of conviction and (B) related to ... the defendant's offense of conviction"); *id.* Application Note 4(e) (adjustment applies to "escaping or attempting to escape from custody before trial or sentencing").

*United States v. Stroud,* on which Blake places considerable reliance, is clearly inapposite. *Stroud* involved "mere flight in the immediate aftermath of a crime," 893 F.2d at 507, and we noted in that case that such a flight

> [i]s not a deliberate pre- or post-arrest attempt to frustrate or impede an ongoing criminal investigation, as in the case of an individual who flees while being sought for questioning some time after the commission of a crime. Nor is this a case where instinctual flight, due to its duration or acts occurring in the course thereof, ripens into a willful attempt to impede or obstruct the administration of justice.

*Id.* at 508. Here, however, Blake's flight from the 84th Precinct constituted a delib-

erate attempt to frustrate or impede the ongoing criminal investigation into his violation of § 922(g)(1). Even if Blake's initial flight had been merely instinctual, however, its duration would have caused it to ripen into a willful attempt to impede or obstruct the administration of justice, as he hid from state and federal law enforcement officers for approximately three hours, while the police searched for him, established a perimeter around the housing complex, and surveiled the area by helicopter. Thus, the District Court's imposition of a two-point enhancement for obstruction of justice was not improper. *See* U.S. Sentencing Guidelines Manual § 3C1.1, cmt. n. 4(e) (2002).

Accordingly, the judgment of the District Court is AFFIRMED.