**UNITED STATES of America,
Appellee,**

v.

**Robert CASE, Defendant–Appellant.**

**Docket No. 98–1735.**

United States Court of Appeals,
Second Circuit.

Argued June 9, 1999.

Decided June 17, 1999.

Joseph W. Ryan, Joseph W. Ryan Jr., P.C., Uniondale, NY, for Defendant–Appellant.

Susan Corkery, Assistant United States Attorney, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney for the Eastern District of New York, Michael Cornacchia, Assistant United States Attorney, Brooklyn, NY, on the brief), for Appellee.

Before: Feinberg and SACK, Circuit Judges, and SPRIZZO, District Judge.*

* Hon. John E. Sprizzo, of the United States District Court for the Southern District of · New York, sitting by designation.

PER CURIAM :

On April 27, 1997, Robert Case, the general manager of Ebb Van Lines, Inc., pled guilty to a one-count information charging that in 1990 he received taxable income in the amount of $19,375 upon which he paid no tax. The information and plea arose out of a lengthy Internal Revenue Service investigation concerning Case's and Ebb's tax practices for the period from 1988 through 1990. The plea agreement included a provision pursuant to which Case agreed that he would, prior to his sentencing, pay to the IRS all taxes, penalties, and interest owed by him and by Ebb for the period from 1988 to 1990. Case also agreed that he would "fully cooperate" with the IRS in its efforts to ascertain the amount of unpaid taxes, penalties, and interest owed by both Case and Ebb for the period from 1988 to the date of the plea agreement.

In May 1997, Case submitted to the Probation Department a sworn statement of his and Ebb's financial status that represented that Case held cash in the amount of $724,319.72, and that Ebb had a liability of $295,074.01 reflecting money owed by Ebb to its independent contractor drivers.

Over the ensuing months, Case satisfied his obligation to pay his back taxes but, because the specific amount of unpaid penalties and interest remained unresolved, the court adjourned sentencing on several occasions. On December 19, the IRS appointed Officer Vincent Nardella to bring the matter to a resolution. Towards that end, Officer Nardella requested Case to prepare two IRS forms (Form 433–A, reflecting Case's current financial status, and Form 433–B, reflecting Ebb's current financial status) and to deliver these forms as well as three months' worth of bank statements and canceled checks to a meeting on January 5, 1998.

Case turned to Laurie Russo, a partner of his regular accountant, for help in preparing the IRS forms. Russo, who later testified that she was not familiar with Case's finances, began work on or about Monday, December 23, discussing with Case her need to obtain information concerning his income and expenses, including any supporting bank documentation. After an initial exchange of information, Russo further explained to Case, on Friday, December 26, that she needed information on any cash held in the form of a certificate of deposit ("CD") account. Russo testified that Case responded that "he would go home and look for it over the weekend and he would get it to me for Monday morning." He did provide her with some information concerning CD accounts on Monday, and by the following day, the IRS forms were completed and delivered to Officer Nardella.

The Form 433–A (reflecting Case's financial status) indicated that Case held $756,624 as cash on hand. It is undisputed that this understated Case's actual cash holdings by approximately $1.1–1.2 million, which Case held in the form of six additional CD accounts. The Form 433–B (reflecting Ebb's financial status) indicated that Ebb held $300,061 in an escrow account for the purpose of satisfying a liability to its independent contractor drivers. Eventually, Case would concede that it was inappropriate to categorize these funds in this manner.

Based on the information contained in the these forms, Officer Nardella concluded that Ebb was unable to satisfy its unpaid penalties and interest (approximately $323,000). He therefore suggested that Case might personally be liable for Ebb's debt. Case countered with an offer of compromise: he would willingly pay Ebb's debt, but only in the amount of $100,000. Officer Nardella indicated that he would take the matter up with his superiors.

On March 17, 1998, Case submitted to the Probation Department new sworn statements of his and Ebb's financial status, revealing that he in fact held cash on hand in the amount of $1.9 million, and

that Ebb did not have a $300,061 liability reflecting money owed to its drivers.

Shortly afterward and as a result, the government moved to deny Case a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and to impose a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. The government argued that by submitting the sworn inaccurate IRS forms in December 1997, Case obstructed justice in that he both committed perjury and produced a false document during the pendency of his sentencing. The government argued also that Case had failed to accept responsibility in that he had continued to fail to disclose his true financial situation to the IRS.

Case responded with a lengthy affidavit explaining that his inaccurate disclosures were merely inadvertent. He elaborated that the forms were prepared during the busy Christmas week, that he had also been compelled that week to personally drive one of Ebb's trucks on a round-trip from New York to Florida and back, that he had signed the Form 433–A before it was filled out, and that his accountant Russo was unfamiliar with his finances. Case also asserted that the government in any event was aware at all times that Case possessed the six undisclosed CD accounts.

A *Fatico* hearing was held to resolve the issue, during which the government presented testimony from various IRS agents and Case presented testimony from Russo. Russo's account essentially confirmed that the Christmas work week was hectic, that Case was "rushed," that she had sought information about CD accounts from Case, and that she had filled the forms out based on the information he provided to her. In turn, the IRS agents denied that the IRS already was aware of the six undisclosed accounts.

On September 3, 1998, the district court granted the government's motion, denying a reduction for acceptance of responsibility and granting an enhancement for obstruction of justice. The court's memorandum

and order set forth the evolving nature of Case's financial disclosures, and then concluded

> defendant continued his pattern of *wilful* tax evasion after his plea of guilty and his plea agreement in which he agreed to fully cooperate with the Government. From this conduct, it is abundantly clear that the defendant was doing his best to obstruct justice and refuse to accept responsibility. Omissions in excess of over one million dollars and six different bank accounts in sworn statements to the IRS and the Probation Department, and playing a shell game with false sworn financial statements over a year's period are not evidence of mistake or innocent error as defense counsel would have us believe. They are proof positive of an unrepentant, *wilful* attempt to obstruct justice and further evade tax liability. It certainly should not have taken defendant ten months to prepare a truthful statement of his assets.

(Emphasis added).

With a resulting offense level of thirteen, and a criminal history category of I, Case's sentencing range became twelve to eighteen months. The court sentenced him at the bottom of this range (twelve months' imprisonment), to be followed by three years' supervised release, and a $50 special assessment. Case is free on bail pending the outcome of this appeal.

On appeal, Case contends that the district court clearly erred in granting the government's motion to enhance for obstruction of justice and to deny him a reduction for acceptance of responsibility. Specifically, Case argues that the obstruction determination was clearly erroneous because (1) the court allegedly made no specific finding as to Case's intent; (2) the court cited no cases in its decision and failed even to mention the *Fatico* hearing or any of the testimony therefrom in its decision; and (3) the evidence in any event does not support a finding that Case intended to obstruct justice. Case also con-

tends that (1) because the acceptance of responsibility issue was not discussed separate from the obstruction issue, reversal as to the latter also requires reversal as to the former; and (2) in any event, it was error not to award Case the reduction given the evidence of his acceptance of responsibility. None of these arguments has merit.

### A. *Obstruction of Justice*

Sentencing Guideline § 3C1.1 provides that

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or *sentencing* of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (1997) (emphasis added).[1] Application Note 3 to this section sets forth a non-exhaustive list of examples of obstructive conduct, including the following:

> (b) committing, suborning, or attempting to suborn perjury;
>
> (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding. . . .

U.S.S.G. § 3C1.1, comment. (n.3) (1997). Application Note 1 cautions, however, that

> In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1, comment. (n.1) (1997).

This Court has repeatedly emphasized that " § 3C1.1 contains a clear *mens rea* requirement that limits its scope to those who 'willfully' obstruct or attempt to ob-

struct the administration of justice." *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990). *Stroud* went on to explain that "we are convinced that the word 'willfully,' as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice." *Id.; see also United States v. Cassiliano*, 137 F.3d 742, 747 (2d Cir.1998); *United States v. Reed*, 49 F.3d 895, 900 (2d Cir.1995).

■ This Court also has addressed the degree of specificity required when a district court rules on the question of willfulness in this context:

> When the sentencing court resolves a disputed issue of fact, it is required to state its findings with sufficient clarity to permit appellate review. In order to impose a § 3C1.1 obstruction-of-justice enhancement on a defendant who has raised an issue as to his state of mind concerning the conduct alleged to have obstructed or impeded the administration of justice, the court must make a "specific finding of intent."

*Reed*, 49 F.3d at 900–01; *see also United States v. Martin*, 157 F.3d 46, 49 (2d Cir. 1998); *United States v. Thomas–Hamilton*, 907 F.2d 282, 285 (2d Cir.1990). Because intent is a question of fact, such a finding is subject to the clear error standard. *See Cassiliano*, 137 F.3d at 745.

■ In this case, the district court did indeed make a specific finding that Case's conduct was willful. Moreover, the unmistakable gist of the court's memorandum and order is that the court found that Case's mistakes were not inadvertent but instead were completely intentional and designed to stave off the IRS's attempts to collect on the remainder of Ebb's tax debt.

The court's conclusion was not clearly erroneous. It was for the district court to decide whether to credit Case's explanation that he was extremely "busy" during the Christmas period and that he was

---

1. The 1997 version of the Guidelines is applicable because Case was sentenced in September 1998. *See United States v. Broderson*, 67

F.3d 452, 456 (2d Cir.1995); *see also* 18 U.S.C. § 3553(a)(4)(A).

merely negligent in failing to provide his accountant with information concerning $1.2 million in CD accounts that he owned. It was well within the district court's discretion to disbelieve the defendant, as it did.

### B. *Acceptance of Responsibility*

The Sentencing Guidelines provide that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense by 2 levels." U.S.S.G. § 3E1.1 (1997). Application Note 4 recognizes that

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may however, be *extraordinary* cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1, comment. (n.4) (1997) (emphasis added).

"The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5) (1997); *see also United States v. Harris,* 13 F.3d 555, 557 (2d Cir.1994) ("a district court's determination in this regard should not be disturbed unless it is 'without foundation.' ").

 Case's first argument under this heading, that reversal on the question of obstruction of justice automatically requires reversal on the question of acceptance of responsibility, is of no consequence since the Court affirms the obstruction of justice enhancement. This leaves only the argument that, despite a finding of obstruction of justice, it was clear error for the court to deny Case a reduction in his offense level based on his alleged acceptance of responsibility, as this was an extraordi-

nary case within the meaning of Application Note 4. There is, however, nothing "extraordinary" about this case in that regard, and there is no reason to conclude that the district court's decision was without foundation.

Accordingly, we affirm the judgment of the district court.