**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

COREY ANTWAN WILSON,

    Defendant-Appellant.

No. 99-6233
(D.C. No. 98-CR-93-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

    Defendant pleaded guilty to distributing crack cocaine, admitting the

offense involved ten grams.  Based on his leadership role, his obstruction of

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

justice, and the drug quantities involved in other relevant conduct determined after two separate hearings,[1] defendant was sentenced to life imprisonment. He now appeals his sentence, contending it is (1) in excess of the applicable statutory maximum[2] and (2) in violation of the United States Sentencing Guidelines governing obstruction of justice, acceptance of responsibility, role in the offense, and calculation of drug quantities. We hold that 21 U.S.C. § 841(b)(1)(B)(iii) imposes an upper limit of forty years on defendant's sentence, and that the district court correctly applied the Guidelines as to obstruction of justice, acceptance of responsibility, and role in the offense, but erred in determining the relevant drug amounts. We therefore vacate defendant's sentence and remand for resentencing.

**Statutory Maximum**

We recently clarified that "the mandatory sentencing directives in § 841(b) are governed solely by the drug quantities involved in the offense of conviction." *United States v. Santos*, 195 F.3d 549, 553 (10th Cir. 1999). "[O]ther drug quantities, which would qualify as 'relevant conduct' for calculating the

---

[1] The district court held one hearing generally to allocate drug quantities among the various co-defendants, and then held a second hearing focused solely on the calculation of defendant's particular sentence. For our purposes, there is no need to distinguish between the two hearings.

[2] Defendant raised this statutory issue in a pro se supplemental brief, which we now order formally filed. Over his client's objection, counsel has moved to file another supplemental brief to bolster the same argument. In light of our disposition of the issue, we deny counsel's motion as moot.

sentencing range under the [Guidelines] . . . may [not] be included in an aggregate to trigger the statutory directives." *Id.* at 550. Thus, as the government concedes, defendant's sentence may not lawfully exceed the forty-year maximum applicable to the distribution of ten grams of crack cocaine. [3] *Compare* § 841(b)(1)(B)(iii) (specifying sentencing range of five to forty years for distribution of "5 grams or more" of crack cocaine) *with* § 841(b)(1)(A)(iii) (specifying sentencing range of ten years to life for distribution of "50 grams or more" of crack cocaine). We must therefore vacate defendant's sentence of life imprisonment.

## Guideline Application

1.    Obstruction of justice

The district court found defendant obstructed justice in two respects while awaiting sentence: first, he attempted to intimidate an important sentencing witness (co-defendant Dennis Reed), and second, he submitted affidavits from himself and a family member containing representations conclusively shown to be

---

[3]    Although both defendant and his counsel represent in unqualified terms that he pleaded guilty to distributing ten grams of crack cocaine, the record available to us suggests the drug quantity was not specified in the indictment or defendant's plea, but was derived from admissions made in association with sentencing. We note this circumstance, as it might implicate further sentencing limitations discussed in *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). However, because defendant has never raised this legal issue and, indeed, has recited factual circumstances which, if true, would undercut it, we express no opinion on its merits or procedural availability in the first instance in the resentencing proceedings to be conducted on remand.

false by records introduced at the hearing. Defendant contends the resultant two-point enhancement for obstruction was erroneous, but challenges only the witness-intimidation finding. As the unchallenged perjury/subornation finding is, by itself, a sufficient basis for the enhancement, defendant's success on appeal is foreclosed–regardless of his arguments relating to witness intimidation. *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (holding appellate relief foreclosed when appellant challenges only one of two alternate bases for ruling under review).

In any event, we have also reviewed the evidence of defendant's interaction with Reed while incarcerated prior to sentencing. Reed testified that defendant approached him about a statement he had made to investigators and warned him "I'm not going to let you hurt me. You know, I'm not going to let you take my life." R. Vol. 12 at 1305. The plain implication to Reed was "that whatever it take[s] for [defendant] to stop me from testifying against him, that's what it meant, exactly. . . . Including hurting me." *Id.* Later, defendant came to Reed's cell with several inmates who, Reed said, if provoked, "would have jumped me, ain't no doubt about it." *Id.* at 1306. Defendant kept repeating "what's up?" until someone said "[i]f you['re] not going to put hands on him, come on, let's go." *Id.* at 1306-07. Eventually, they left. Reed explained the situation this way: "[H]e wanted to intimidate me to scare me into helping turn things around to make me

-4-

lie for him, and at the time, you know, I had to do the best thing I could, and that was to lie to him and tell him that I would do whatever it took to help him." *Id.* at 1310. Finally, a special agent (Nicholas Manns) assigned to the case testified that Reed informed him of these incidents and others long before defendant's sentencing hearing. *Id.* at 1347-50. We conclude the district court's finding of intimidation was not clearly erroneous. *See United States v. Hankins*, 127 F.3d 932, 934 (10th Cir. 1997).

2.    Acceptance of responsibility

The district court denied defendant a reduction for acceptance of responsibility, despite his guilty plea, based on his post-plea attempts to obstruct justice. We review that decision for "clear error," affording it "great deference" because "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Hawley*, 93 F.3d 682, 689 (10th Cir. 1996) (quotation omitted).

"Application Note 4 [to USSG § 3E1.1] . . . advises that conduct resulting in an enhancement [for obstruction of justice] . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Hawley*, 93 F.3d at 689 (quotation omitted). We see no error, much less clear error, in the district court's conclusion that defendant's attempts to subvert the sentencing process–itself serious wrongdoing he refuses to admit–undercut any acceptance of

responsibility indicated by his guilty plea. *See, e.g.*, *United States v. Branch*, 195 F.3d 928, 937 (7th Cir. 1999) (affirming denial of acceptance-of-responsibility reduction because defendant committed perjury at sentencing); *United States v. Case*, 180 F.3d 464, 466, 468 (2d Cir. 1999) (affirming denial of reduction because defendant committed perjury and submitted false documents during pendency of sentencing).

3.     Role in the offense

The district court found defendant to be "a leader in a criminal organization that involved five or more participants and was otherwise extensive," imposing a four-level enhancement under USSG § 3B1.1(a). We review this determination "for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Smith*, 131 F.3d 1392, 1398 (10th Cir. 1997). And, contrary to the understanding expressed in defendant's supplemental brief, "all relevant conduct . . . , not merely the conduct involved in the count[] of conviction," is properly considered in this regard. *Id.*

Testimony at sentencing showed more than five people performed various functions at defendant's direction in connection with his extensive crack cocaine operation, including selling drugs, providing locations for drug sales, providing locations for drug storage, transporting defendant for drug procurement and sale, and performing various ancillary services such as retrieving stashed drugs, wiring

funds, and taking customers to defendant. Defendant's objection that they were "independent contractors" outside the scope of § 3B1.1 because they performed some of the same services for other drug dealers is not persuasive. There is no requirement under § 3B1.1 that participation in the defendant's enterprise be exclusive. It is sufficient that defendant recruited accomplices to facilitate his drug operation and exercised significant control over their conduct in this regard. *See id* (discussing and applying factors governing § 3B1.1 inquiry). Ample evidence exists to support the findings of the district court.

4.    Calculation of drug quantity

The district court attributed 1590.8 grams of crack cocaine to defendant, for a base offense level (BOL) of 38. *See* USSG § 2D1.1(c)(1) (specifying BOL of 38 for 1.5 kilogram or more of cocaine base). Defendant contends, for various reasons, that evidence at sentencing established his responsibility for no more than 499 grams, which would translate to a BOL of 34. *See* § 2D1.1(c)(3). We review the district court's quantity determinations for clear error, to ensure they are based on a preponderance of the evidence. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996). As explained below, we hold there is sufficient evidence to support a figure less than the quantity found by the district court but greater than that asserted by defendant, resulting in a BOL of 36. *See* § 2D1.1(c)(2).

a.    Quantity estimates derived from drug proceeds

Defendant's first objection concerns the "dollars to drugs" formula used to derive quantity estimates for two instances involving only proceeds. Indicating without elaboration that it was relying on defendant's own price, the presentence investigation report (PSI) used $90.90 per gram for this purpose. Defendant argued this price was too low and inflated the resultant estimates. At sentencing, the government explained and supplied factual substantiation for the price. Agent Manns, whose reports were reflected in the PSI, testified he used an average of the prices defendant had charged in four controlled sales to a confidential informant–prices which are uncontroverted. The dates and amounts of these sales were all consistent with information in the PSI, which had also specified the price for all but one of the sales. Defendant seizes upon the one sale initially lacking a price specification and argues the government should not have been allowed to include it when calculating the average price (which would be $14 per gram higher without it), citing *United States v. Ivy*, 83 F.3d 1266 (10th Cir. 1996). This argument is meritless. In *Ivy*, we held that by failing to object to a PSI, the government waived the "right to *challenge* the district court's reliance on it [absent plain error]." *Id.* at 1297 (emphasis added). Here the government *endorsed* the PSI, and the district court simply exercised its discretion to "permit

the [government] to introduce testimony or other evidence on the objections" made to the PSI by defendant. Fed. R. Crim. P. 32(c)(1).

b.      Estimate from Reed testimony regarding biweekly delivery

Defendant raises two general objections to the assessment of 878.9 grams of crack cocaine based on statements from co-defendant Dennis Reed, who in March of 1998 said defendant had brought one to two ounces of crack cocaine twice a week to a location frequented by Reed since the fall of 1997. Defendant contends Reed's testimony lacked "sufficient indicia of reliability" necessary to permit the court to rely on it for an estimation of drug quantity. *Ruiz-Castro*, 92 F.3d at 1534 (quotations omitted). First, he argues Reed's drug use undercut his reliability, citing *United States v. Richards*, 27 F.3d 465 (10th Cir. 1994), which noted, without comment, that some other circuits "impose a higher standard of scrutiny to drug quantity estimates made by an addict-informant," *id.* at 469 n.2. *Richards* neither adopted nor rejected this higher standard (and we need not decide whether to do so–defendant has not asserted, much less demonstrated by citation to record evidence, that Reed was an addict). Instead, *"Richards* stands for the proposition that if a witness' estimate conflicts with that witness' own testimony, and there is no other evidence to support the estimate, the estimate will not support a finding." *Ivy*, 83 F.3d at 1290. Defendant cites no relevant self-contradiction by Reed.

Second, defendant notes Reed initially lied to investigators about the full extent of his own criminal activity, and argues Reed was therefore not credible when discussing defendant's activity. The district court was aware of Reed's earlier self-serving prevarication but nevertheless chose to believe his statements about defendant, as had agent Manns. We cannot say this judgment, informed by the judge's own experience observing Reed (and Manns) on the stand at trial and sentencing proceedings in this case, was clearly erroneous. *See United States v. Jackson*, 213 F.3d 1269, 1284 (10th Cir. 2000) (emphasizing deference owed sentencing court's determination of witness credibility); *United States v. Martin*, 163 F.3d 1212, 1217 (10th Cir. 1998) (same), *cert. denied*, 526 U.S. 1137 (1999).

Defendant also raises a more specific objection to the quantity estimated from Reed's statements. With certain modifications to avoid double-counting of amounts accounted for elsewhere, the 878.9 grams were calculated by multiplying one ounce (the lower end of Reed's biweekly estimate) by twice the number of weeks between October of 1997 and February of 1998. Defendant objects that this calculation arbitrarily equated Reed's vague reference to the "the fall" with the specific–and relatively early–fall date of October 1, and that the district court therefore erred in accepting the resultant computation. Based on our review of the record and the government's silence on the issue, we must agree. The estimate is based entirely on Reed's personal observation of defendant and Reed

was never asked to clarify the time frame of that observation. There is simply no evidence, much less a preponderance, to identify the relevant time period, other than to say that it began sometime prior to the winter of 1997. Thus, the twelve weeks between October 1 and December 21, 1997, cannot be included in the calculation. Accordingly, a reduction of twenty-four ounces, or 680.4 grams, from the amount estimated on the basis of Reed's testimony is required.

c.    Double-counting with respect to Nunn estimate

Defendant also objects to the assessment of 198.45 grams of crack cocaine based on the testimony of co-defendant John Nunn. As defendant points out, in light of the broad character of Nunn's testimony, agent Manns admitted it was possible the amounts involved were double-counted elsewhere in the PSI–in his words, "I don't have evidence to show either way." R. Vol. 7 at 909. A lack of "evidence to show either way" is a textbook example of a failure of proof by a preponderance. Again, the government responds with silence to this facially compelling argument. Under the circumstances, the 198.45 grams in question should have been discounted.

d.    Remaining objections regarding drug quantity

The rest of defendant's drug quantity objections lack merit.  He challenges the credibility of witnesses Gina Bromlow and Sherrie Warren, whose testimony implicated nearly 300 grams of crack cocaine, but his conclusory attacks are plainly insufficient to overcome the deference afforded the district court on such matters.  He also objects to 171 grams of crack cocaine included on the basis of testimony by Reed regarding two trips on which Reed accompanied defendant when he obtained three ounces of crack cocaine.  Defendant summarily claims these trips double count amounts derived from Reed's other testimony, and from testimony by Gina Bromlow, Sherrie Warren, and John Nunn, but fails to explain how.  The quantity derived from Reed's other testimony, however, specifically excluded amounts, such as these, exceeding two ounces.  And, there is no demonstrated basis for the alleged overlap with the two one-ounce "cookies" observed by Gina Bromlow or the 220-gram quantity observed, at one time, by Sherrie Warren.  As for possible double-counting of amounts observed by John Nunn, we have already held the 198.45 grams derived from his testimony must be excluded.

**Conclusion**

In sum, we hold that insufficient evidence exists to support 878.85 of the 1,590.845 grams of crack cocaine attributed to defendant as relevant conduct at

sentencing. Deducting that amount leaves a total of some 711 grams, which is less than the 1,500 grams necessary to substantiate the BOL of 38 assessed by the district court, but well in excess of the 500 grams necessary to assess a BOL of 36. *See* USSG § 2D1.1(c). With the other enhancements affirmed above, this translates to a total offense level of 42 and a sentencing range of 360 months to life. Of course, as discussed in section 1, the statutory maximum for the count of conviction imposes an upper limit on any sentence to be imposed.

The sentence imposed on the defendant by the United States District Court for the Western District of Oklahoma is VACATED, and the cause is remanded for resentencing consistent with this order and judgment. The appellant's pro se motion to file his supplemental brief is granted, but counsel's motion to prepare and file an additional supplemental brief is denied.

Entered for the Court

David M. Ebel
Circuit Judge